140 So.2d 587 (1962)
STATE of Florida ex rel. THE FLORIDA BAR, Petitioner,
v.
Alexander T. SPERRY, Respondent.
No. 31411.
Supreme Court of Florida.
April 4, 1962.
Rehearing Denied May 16, 1962.
Sherwood Spencer, Hollywood, J. Lewis Hall, Tallahassee, Donald J. Bradshaw, Inverness, J. Nixon Daniel, Jr., Pensacola, and John H. Gunn, Miami, as and constituting the Special Committee of the Board of Governors of The Florida Bar on Patent Attorneys, Unauthorized Practice of Law, for The Florida Bar, petitioner.
Harry Kemker, Tampa, for respondent.
O'CONNELL, Justice.
In this cause The Florida Bar, by petition filed in this Court, seeks to invoke the *588 original jurisdiction of this Court asking that we require the respondent to show cause why he should not be held in contempt of this Court for the unauthorized practice of law, and further that we enjoin respondent from further unauthorized practice of law in this state.
Basically the petition alleges that the respondent, Alexander T. Sperry, is engaged in the unauthorized practice of law, in violation of Section 2, Article 2, Integration Rule, The Florida Bar, 31 F.S.A., in that although he is not a member of The Florida Bar, hereinafter referred to as the Bar, he nevertheless holds himself out to the public as a patent attorney, maintains an office in Tampa, Florida on the door of which appear the words "Patent Attorney", and is so listed in the telephone directory of the City of Tampa and on the directory in the lobby of the building in which his office is located. Further, the petition alleges that the respondent represents Florida clients before the United States Patent Office, hereinafter referred to as Patent Office; has rendered opinions as to patentability and opinions as to whether or not patent rights are being infringed and are the subject of a cause of action in the courts; has prepared various legal instruments, including contracts, applications and amendments to applications for letters patent, and filed same in the Patent Office in Washington, D.C.; and has prepared briefs and authorities with points of law relating thereto.
Respondent filed an answer to this petition in which he admitted that he was not a member of the Bar, and admitted all the other allegations thereof with the exceptions or qualifications which follow.
As to advising clients on infringement of existing patents, respondent stated he did so only on one occasion and that he did so as a part of his work in filing an application for a patent for a client. As to patent license agreements he alleged that he prepared such only in rough and never in finished form.
He denied that he had prepared any other contracts and denied that he had prepared briefs and authorities with points of law relating thereto.
In defense he also asserted, among other things, that he is duly admitted to practice before the Patent Office, having been admitted in 1928, and under the rules and regulations of that office he is authorized to use the nomenclature "Patent Attorney" even though he is not an attorney-at-law in any jurisdiction; the acts performed by him do not constitute the unauthorized practice of law; and that the injunctive relief prayed for would, if granted, deprive him of the ability to earn a living and deprive him of property without due process of law under the Constitution of Florida and the Fifth and Fourteenth Amendments to the United States Constitution.
The matter has been submitted on the pleadings. The material facts being admitted there is no need for the taking of testimony.
While not raised by either party the first question which we feel necessary for decision is whether this matter is within the original jurisdiction of this Court.
In 1956 the electorate of this state adopted a revised Article V of our state constitution. Section 23 of this new article gives this Court "exclusive jurisdiction over the admission to the practice of law and the discipline of persons admitted."
Quite obviously this matter now before us does not involve either the admission of an applicant to the Bar or the discipline of one already admitted. The question then is whether the authority imposed in Section 23, Article V, also carries with it the power to prevent the practice of law by those who are not admitted to the practice. We think that it must and it does for if it does not the express power to control admissions would be meaningless.
This identical question was raised in a similar case in West Virginia State Bar v. Earley, W. Va. 1959, 109 S.E.2d 420. We *589 adopt as ours the words that court spoke in disposing of the question, at 109 S.E.2d p. 440, to-wit:
"* * * It would indeed be an anomaly if the power of the courts to protect the public from the improper or unlawful practice of law were limited to licensed attorneys and did not extend or apply to incompetent and unqualified laymen and lay agencies. Such a limitation of the power of the courts would reduce the legal profession to an unskilled vocation, destroy the usefulness of licensed attorneys, as officers of the courts, and substantially impair and disrupt the orderly and effective administration of justice by the judicial department of the government; and this the law will not recognize or permit."
The express power contained in our state constitution makes unnecessary any discussion of the inherent power of the courts to regulate the practice of law and those who engage in it. Were it necessary to do so there is abundant authority to support the view that the courts do have such power. Petition of Florida State Bar Ass'n, 1938, 134 Fla. 851, 186 So. 280; Chicago Bar Ass'n v. Kellogg, 1949, 338 Ill. App. 618, 88 N.E.2d 519; In re Baker, 1951, 8 N.J. 321, 85 A.2d 505; West Virginia State Bar v. Earley, 109 S.E.2d 420, supra.
The next question then is whether this Court may enforce its authority in such matters by either or both contempt proceedings and injunction.
The unauthorized practice of law constitutes a contempt of court. West Virginia State Bar v. Earley, supra; In re Baker, supra. See also Cases Noted, 6 Miami Law Quarterly 606.
In Hargett v. Lake, Ky. 1957, 305 S.W.2d 523, as in this case before us, a proceeding was brought originally in the appellate court seeking to have a person held in contempt and appropriately punished for practicing law without license or right. That court adjudged the person involved to be in contempt and ruled that "* * * he is permanently enjoined from engaging in the practice of law."
Aside and apart from these decisions which support the view that a court may invoke contempt and injunctive powers to enforce its authority in such matters, this Court has constitutional authority for so doing.
Sec. 4(2), Art. V, Fla. Const., F.S.A. gives this Court the authority to "issue all writs necessary or proper to the complete exercise of its jurisdiction." Having held above that the authority to regulate the practice of law by those not admitted to the Bar is vested in this Court under the cited section of the constitution, it follows that the power to issue writs necessary to enforce its rules and orders applies to matters affecting the practice of law as much as to any other rule or order within its jurisdiction to enter.
The next question for decision is whether or not the acts committed by the respondent constitute the practice of law in this state. If this is answered in the negative our work is at an end. However if we find such acts to amount to the practice of law then we must determine whether, respondent having been licensed to practice before it by the Patent Office, this state has the power to deny the respondent the right to so practice in this state.
This Court has not previously been called upon to decide whether the activities charged against the respondent, i.e. the work done by a patent attorney, constitute the practice of law if done in this state.
In Petition of Kearney, Fla. 1953, 63 So.2d 630, 631, this Court said that:
"It follows that those who hold themselves out to practice in any field or phase of law must be members of the Florida Bar, amenable to the rules and regulations of Florida Courts. * * *" (Emphasis added)
The Bar here urges that the practice of patent law is certainly a field or phase of *590 law within the purview of this Court's opinion in the Kearney case.
There are however differences between the Kearney case and this one which require that we not treat it as dispositive of this case.
The petitioner Kearney was duly admitted to practice before the Supreme Court and the Tax Court of the United States and before the Treasury Department of the United States. He was not a member of The Florida Bar. He sought permission to practice in Florida as "Federal Tax Counsel" with his court appearances to be limited to the federal courts and the departments above mentioned. This Court, in proceedings originating before it as in this case, ruled that the permission to practice in this state in the manner contemplated was not governed exclusively by the rules of the United States courts and departments; rather, it held that such would constitute the practice of law in this state and Kearney in order to do so would have to become a member of The Florida Bar, subject to the jurisdiction of this Court. In its opinion this Court cited Sec. 2, Integration Rule, supra, stressing that said rule provides that no person shall engage in any way in the practice of law in this state unless he is an active member of The Florida Bar.
In the Kearney case this Court obviously started with the premise that the activities which Kearney wished to pursue in this state constituted the practice of law. This Court did not discuss the question other than to state that the American Bar Association and many states hold that practice before the Tax Court and the Treasury Department may constitute the practice of law, citing decisions in support of the statement.
But in this case we cannot start with the premise that the activities of the respondent constitute the practice of law for he puts this question squarely in issue.
While the Kearney case may well stand for the proposition that practice before the Tax Court and the Treasury Department "may constitute the practice of law which may be enjoined if attempted by one not admitted to practice" (63 So.2d at p. 630) it cannot be said to hold that practice before any or all other federal administrative agencies necessarily constitutes the practice of law.
The Bar cites the case of Chicago Bar Association v. Kellogg, 88 N.E.2d 519, supra. In that case the court held that the person so charged, without prejudice to his right to advise and assist applicants for patents in the presentation and prosecution of their applications for patents before the United States Patent Office, should be enjoined from the following activities:
1. giving legal advice;
2. preparing, drafting and construing legal documents, contracts, including patent licenses and deeds, assignments and other evidences of transfer of title to or interests in patent and other property;
3. rendering legal opinions, including legal opinions relating to title to, and validity, infringement and enforcement of, patents and trade marks and rights therein and thereto;
4. preparing, drafting and filing pleadings and other legal documents and papers in suits at law and in equity, in courts of record and before administrative tribunals, other than the Patent Office;
5. participating, as an attorney, in legal proceedings;
6. in behalf of persons represented by him, threatening to bring suits against other parties;
7. preparing and serving notice of and asserting attorney's lien; and
8. charging and collecting fees for legal services rendered by him and rendered by him and others.
Apparently the court was not asked to and did not enjoin the preparation of applications for letters patent and of amendments to such applications. However, it did enjoin *591 the charging of fees for legal services, including those wherein the Patent Office had jurisdiction.
Respondent's argument is that the practice of "patent law" is not the "practice of law." In support thereof he cites several cases which, while not actually in point, do strongly indicate the subject court's opinion to be that such practice is not the practice of law. Zenith Radio Corp. v. Radio Corp. of America, 121 F. Supp. 792 (D.Del. 1954); Application of Plantamura, 1960, 22 Conn.Sup. 213, 166 A.2d 859; Public Service Traffic Bureau, Inc. v. Haworth Marble Co., 1931, 40 Ohio App. 255, 178 N.E. 703.
While few cases in other jurisdictions can be found relating to the question whether practice before the Patent Office constitutes practice of law, numerous decisions concerning such question as related to other agencies, departments and commissions can be found. There is lack of uniformity therein as to whether such practice is the practice of law. See Annotation 111 A.L.R. 19 (1937), supplemented in 125 A.L.R. 1173 and 151 A.L.R. 781.
The Patent Office, in the sense pertinent here, is an administrative agency, not a court.
Yet it is not the nature of the agency or body before which the acts are done, or even whether they are done before a tribunal of any sort or in the private office of an individual, that determines whether that which is done constitutes the practice of law. The best test, it seems to us, is what is done, not where, for the safest measure is the character of the acts themselves. If they constitute the practice of law the fact that they are done in the private office of the one who performs them or before a nonjudicial body in no way changes their character.
Many courts have attempted to set forth a broad definition of the practice of law. Being of the view that such is nigh onto impossible and may injuriously affect the rights of others not here involved, we will not attempt to do so here. Rather we will do so only to the extent required to settle the issues of this case.
It is generally understood that the performance of services in representing another before the courts is the practice of law. But the practice of law also includes the giving of legal advice and counsel to others as to their rights and obligations under the law and the preparation of legal instruments, including contracts, by which legal rights are either obtained, secured or given away, although such matters may not then or ever be the subject of proceedings in a court.
We think that in determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.
We will use this measure in testing the acts of the respondent.
The first act to be performed by a person representing another who wishes to secure a patent on an alleged invention is to determine whether the device is patentable. As stated in Marshall v. New Inventor's Club, Inc., 1953, 69 O.L.A. 578, 117 N.E.2d 737, at p. 739:
"Not every alleged patent is patentable. Hence the rendering of an opinion as to patentability requires a knowledge of the patent statutes and of the decisions interpreting them. * * *"
A patent is undoubtedly a property right. It is difficult to see how any valid distinction *592 can be made between advising one as to whether he does or does not have a cause of action in a court involving his rights and advising one that he does or does not have a patentable device, under the laws and decisions applicable thereto, and the right to protect the invention by obtaining a patent.
The advising of persons as to their rights under the law universally has been held to be the practice of law. We think that one who holds himself out to the public in this state as qualified to advise as to patentability and does so is engaging in the practice of law. The same is true of the act of advising as to infringement of patent rights. Both require extensive knowledge of the law, statute and case, in a field of the law that is as technical and involved as any known today.
A patent is variously described as a public franchise or as a contract. In all definitions it is apparent that:
"A patent duly issued amounts to a contract between the inventor and the government, under which the public, through the government, agrees that, in consideration of the inventor's disclosure of his invention and the grant of the right to use it after his patent expires, he shall be protected in his exclusive use during the life of the patent, * * *." 69 C.J.S. Patents § 5. "Patent is a contract by which the government secures to the patentee the exclusive right to vend and use his invention for a few years, in consideration of the fact that he has perfected and described it and has granted its use to the public forever after. The general rules for the interpretation of grants and contracts govern its construction * * *." National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 F. 693 (8th Cir.1901).
As pointed out by the Supreme Court of the United States in Topliff v. Topliff, 1892, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, the terms of those contractual documents which constitute a patent make it one of the most difficult of all legal instruments to draw with accuracy. In speaking of the matter in that case the Supreme Court of the United States said, at 145 U.S. p. 171, 12 S.Ct. p. 831:
"* * * The specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy, and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, and err either in claiming that which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. * * *"
It is thus apparent that the preparation of applications for patents, and amendments thereto, involves the preparation of the terms of an involved contract and proof of the right to have same issued by the government, requiring legal knowledge and skill far in excess of that possessed by the layman. The preparation of such documents is unquestionably the practice of law and the fact that the preparation and procedures are not done in a court but rather before an administrative agency does not change the character of the acts from legal to non-legal.
Not only is the basic question of patentability controlled by law and court decisions but equally important is the fact that interpretations of the rights protected in a patent are made by the courts. Therefore in drafting and preparing the application and amendments he who prepares the documents must have a clear knowledge of the effect of the existing law on the questions involved, else valuable rights of the inventor may be forfeited.
*593 It is also important to note that the application for a patent, the "actions" or objections thereto issued by the examiner in the Patent Office, the "amendments" or answers filed to the "actions" by the applicant, and the final allowance or rejection by the examiner constitute the basis and subject matter of any appeal to a Board of Appeals of the Patent Office, and thereafter to the Court of Customs and Patent Appeals or to a federal district court, in the same manner that the record made in a trial court is the subject of review by an appellate court. In such a review of a decision of the Patent Office on a patent application the review is limited to the matters presented in the application and amendments thereto, and if these documents do not adequately reflect and present the applicant's rights, as required by law and the decisions of the courts, valuable legal rights, which if properly presented to the Patent Office might be saved on review, will be lost.
All that is done in the proceedings before the Patent Office must therefore be done with the view that what is done will or may ultimately be interpreted as to meaning and measured as to sufficiency by a court or courts.
All of these considerations buttress our conclusion that the preparation of patent applications and amendments thereto by the respondent for others in a representative capacity does constitute the practice of law. This statement would also apply to the preparation of licensing agreements and other contracts involving patent rights and interests therein.
The remaining question then is whether the respondent, by virtue of his admission to practice before the Patent Office as a Patent Attorney, has the right to do these things in this state without being admitted to The Florida Bar.
We think this question was answered in the negative in the Kearney case, 63 So.2d 630, supra. As above noted, in that case we held that any one who holds himself out to the practice "in any field or phase of law" must be a member of The Florida Bar.
In other jurisdictions there seems to be a lack of accord on the question as it relates to practice before other administrative agencies of the federal government.
Respondent points out that in Chicago Bar Association v. Kellogg, 88 N.E.2d 519, supra, the appellate court in reversing the trial court on that issue refused to enjoin the patent attorney from preparing and prosecuting applications for patents, although it did enjoin him from preparing, drafting and construing "legal documents, contracts, including patent licenses and deeds, assignments and other evidences of transfer of title to or interests in patent and other property." 88 N.E.2d at p. 527. The court did not explain why it refused to enjoin the preparation of applications for patents and amendments thereto. It did not state that it would not enjoin those acts because the respondent there was licensed by the Patent Office. On the contrary the court in its opinion, at 88 N.E.2d, p. 526, stated that:
"* * * The issue before us is not what things defendant may do under the authority he claims from his license to appear before the United States Patent Office, but what things, if any, he has done in violation of the laws of the State of Illinois. * * *"
Just prior to making the above statement the court also said, at 88 N.E.2d, p. 526:
"* * * The courts of the State of Illinois, and not the United States Patent Office, may determine what constitutes the illegal practice of law in this State. * * *"
It does not appear from the opinion that the court was asked to enjoin the preparation of application for patents and amendments thereto and this may be the reason why the court did not do so. No other reason is indicated in the opinion.
*594 We do not think the opinion in that case supports this respondent's contention that the license to practice before the Patent Office gives him the right to practice as a patent attorney in this state.
Respondent also cites the cases of De Pass v. B. Harris Wool Co., 1940, 346 Mo. 1038, 144 S.W.2d 146; Auerbacher v. Wood, 1947, 139 N.J. Eq. 599, 53 A.2d 800; In re Lyon, 1938, 301 Mass. 30, 16 N.E.2d 74; and Noble v. Hunt, 1957, 95 Ga. App. 804, 99 S.E.2d 345. Each of these cases in some way supports the view that where a federal court or agency permits a layman to practice before it, a state may not prevent a layman who is licensed to practice before that court or board from such practice in the state even though such actions constitute the practice of law and practice of law by a layman is contrary to the policy of the state.
While we agree that each of the federal courts and each of those federal agencies which are authorized by Congress to do so may determine who shall be permitted to practice before them, we do not agree that such authority in any way gives those bodies the authority also to determine that those licensed by it have the right to practice law, in the particular field involved, within the borders of this state.
It may well be that this state may not prohibit any person from appearing and practicing law before a federal court or agency in this state, if he be licensed by the federal court or agency, even though such person not be a member of the Bar of this state. But appearing before such bodies is an entirely different thing from a person holding himself out in this state as qualified to practice law before such federal bodies, maintaining an office in this state for that practice, and doing in this state the many things that are necessary to be done preparatory to the actual appearance before such bodies.
For example, if a United States Court of Appeals conducts sessions in this state attorneys from other states, not licensed to practice in this state, could not be prohibited from arguing before that court in this state, but they would not be permitted to establish an office and hold themselves out in this state as qualified to practice before the federal court unless they were first admitted to the Bar of this state. The Kearney case, 63 So.2d 630, supra, settled this point directly.
If we were to hold otherwise any person licensed to practice before the United States Supreme Court or any other federal court could establish an office and hold himself out in this state as being qualified to represent Florida citizens before those courts without this state having any control over their right to so hold themselves out, or any control over their actions.
As a further example, if the federal district courts in this state were to license non-lawyers to practice before them, these non-lawyers, under the rule contended for by respondent, would have the right to establish an office in this state and to hold themselves out to the citizens of this state as qualified to practice law before such courts and this state would be powerless to protect its citizens in the matter.
Fortunately no such dispute has yet arisen between the states and the federal courts and it is hoped that it never will. Generally speaking the federal courts permit only duly admitted lawyers to practice before them and the matter of determining whether persons shall be admitted to the Bar has been left to the states. It appears that it is only in the federal quasi-judicial and administrative agencies, such as the Patent Office, that the non-lawyer is licensed to practice.
As above stated, we have no argument with the power of such agencies to determine who shall practice before them, but we do not agree that their licensing of a non-lawyer is in anywise to be taken as proof that the work done before them is not the practice of law or that one licensed by them has the right by virtue of *595 said license to hold himself out as qualified to do those things in this state.
It is generally held that a state acting under its police power has the right to define the practice of law and to determine who is qualified to practice within its borders. Chicago Bar Association v. Kellogg, 88 N.E.2d 519, supra; Petition of Florida State Bar Association, 186 So. 280, 285, supra; Clark v. Austin, 1937, 340 Mo. 467, 101 S.W.2d 977; Richmond Association of Credit Men, Inc. v. Bar Association of City of Richmond, 1937, 167 Va. 327, 189 S.E. 153.
We know of no provision in the Federal Constitution, or statutes for that matter, that gives to any federal body the power to determine who may practice law in the several states, or to define the practice of law within the states, and the respondent has cited us none. We do not think that the power to determine who may practice before it gives any such body the implied power to make either determination for this state.
We therefore hold that the license to practice before the Patent Office held by respondent does not give him the right to do in this state those things above listed.
The reason for prohibiting the practice of law by those who have not been examined and found qualified to practice is frequently misunderstood. It is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control in the matter of infractions of the code of conduct which, in the public interest, lawyers are bound to observe.
It cannot be denied that the public suffers, as does both the public image of the legal profession and our judicial system, when those not qualified to do so are permitted to hold themselves out as qualified to practice law and as worthy of the trust and confidence of those who have legal problems the solution of which require trained advice and counsel.
If the truth be known the unauthorized practice of law by those not qualified and admitted actually creates work for the legal profession because of the errors and mistakes of those who for others illegally perform legal work they are not competent to perform. In this the members of the legal profession gain, but the unfortunate members of the public who were ill-advised lose, in some instances quite badly.
It is the effort to reduce this loss by the members of the public that primarily justifies the control of admissions to the practice of law, discipline of those who are admitted, and the prohibition of the practice to those who have not proved their qualifications and been admitted. As incidents of this system the administration of justice is aided and the public image of the legal profession is enhanced.
Here it should be said that no one who evidences the reasonable standards of education, training, experience, good morals and character required by the rules of this Court and who can pass the bar examination, which is given twice yearly, is denied the privilege of practicing law in this state. There is no quota or limit to the number who may be admitted.
In fairness to the respondent in this cause we make clear that nothing we have said in this opinion is intended to indicate that he is not in fact competent to perform those services which he has rendered or that the affairs of any citizen of this state have suffered at his hands.
It may be that he is fully competent to practice law, that he has the educational and other qualifications required of an applicant for admission to the Bar of this state, and that he is well able to pass the bar examination, but until he has done so we have no way of assuring the public that he is qualified to practice law in this state.
*596 Respondent argues that if we grant the injunction prayed for by the Bar we would deprive him of the ability to earn a living and deprive him of property without due process of law contrary to the guarantees of the Florida and United States Constitutions.
The issuance of an injunction by this Court will deprive respondent of the right to earn a living in the practice of law in this state, but it will take nothing from him to which he has any right, for he does not now have the right to practice law in Florida. Nor will it in any way affect his right to practice before the Patent Office in Washington, D.C.
The right to practice law is not a privilege or immunity of a citizen of the United States within the meaning of the Fourteenth Amendment to the Constitution of the United States. West Virginia State Bar v. Earley, 109 S.E.2d 420, supra, Ginsburg v. Kovrak, 1958, 392 Pa. 143, 139 A.2d 889, appeal dismissed 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46. See also Petition of Florida State Bar Association, 186 So. 280, supra.
Our conclusion, then, is that the respondent, until and unless he becomes a member of the Bar of this state, should be and is permanently enjoined from the following activities in this state:
1. using the term "patent attorney" or holding himself out to be an attorney at law in this state in any field or phase of the law (we recognize that the respondent according to the record before us has already voluntarily ceased the use of the word "attorney");
2. rendering legal opinions, including opinions as to patentability or infringement on patent rights;
3. preparing, drafting and construing legal documents;
4. holding himself out, in this state, as qualified to prepare and prosecute applications for letters patent, and amendments thereto;
5. preparation and prosecution of applications for letters patent, and amendments thereto, in this state; and
6. otherwise engaging in the practice of law.
This injunction cannot and shall not in anywise be construed to affect any rights which the respondent has to practice before the Patent Office when done outside this state.
It appearing to us that the respondent has cooperated in seeking a determination of his right to do the things charged against him and has not willfully violated any order or rule of this Court which clearly settled the issues involved here, we do not feel that we should now hold him in contempt of this Court. We have no reason to believe that he will not obey the injunction contained herein. If he does, then an order in contempt will be appropriate.
It is so ordered.
ROBERTS, C.J., and THOMAS, DREW and THORNAL, JJ., concur.