380 So.2d 412 (1980)
THE FLORIDA BAR, Complainant,
v.
Edward P. MOSES, Respondent.
No. 53305.
Supreme Court of Florida.
January 17, 1980.
Rehearing Denied March 24, 1980.
*413 Ronald R. Richmond, Chairman, Standing Committee on Unauthorized Practice of Law, New Port Richey, John A. Weiss and H. Glenn Boggs, Asst. Staff Counsels, and Cass D. Vickers, Bar Counsel, Tallahassee, for complainant.
Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, for respondent.
Jim Smith, Atty. Gen., J. Ken Tucker, Deputy Atty. Gen., William C. Sherrill, Jr., Chief Trial Counsel, and Jerome W. Hoffman, Sp. Asst. Atty. Gen., Tallahassee, for amicus curiae.
Sidney L. Matthew and Patricia A. Renovitch, Gen. Counsel, Tallahassee, for Florida Ed. Ass'n/United, AFT, AFL/CIO, amicus curiae.
PER CURIAM.
This is an original proceeding from The Florida Bar on a joint petition which requests a determination of whether certain conduct constitutes the practice of law and whether, if it does, it is the unauthorized practice of law in violation of article V, section 15 of the constitution. Put another way, the question here is whether the legislature (or an agency) can approve by law (or by rule) in certain administrative fori of the state conduct which, in the absence of legislative authorization, would constitute the practice of law. We have jurisdiction. Article V, section 15, Florida Constitution; State ex rel. The Florida Bar v. Sperry, 140 So.2d 587 (Fla. 1962).
The Florida Bar (Bar) and Edward P. Moses (respondent) have filed a Joint Petition and Stipulation to Facts. Specifically, they ask us to determine whether respondent's appearance in a representative capacity before a hearing officer of the Division of Administrative Hearings (DOAH) in unfair labor practice (ULP) proceedings constituted the unauthorized practice of law. The parties concur that respondent has never been licensed to practice law in Florida. He is a general management consultant specializing in educational labor relations. Education Services Bureau, Inc., a corporation hired by the Escambia County School Board (Board) employed respondent in his capacity as a labor relations specialist from November 1974 until November 1975. At that time respondent went to work for the Board as a non-paid employee and continued as such until April 1976. During his tenure with Educational Services Bureau, Inc., respondent participated as the Board's negotiator in collective bargaining between the Board and the Escambia Education Association (Union). In the course of these proceedings, the Union filed ULP charges with the Public Employees Relations Commission (PERC). This led PERC to charge the Board with engaging in ULP by 1) engaging in improper surveillance of picketing school teachers; 2) not bargaining in good faith; and 3) engaging in improper dues scheduling practices.
Respondent represented the Board at the ULP hearing on these charges in December 1975, pursuant to a rule adopted by PERC to authorize lay representation in its proceedings which states:

*414 Any party shall have the right to appear at any hearing in person, by counsel, or by other representative... . Fla. Admin. Code Rule 8H-4.13(a).
This rule was adopted under the authority conferred by section 120.62(2), Florida Statutes (1975), of Florida's Administrative Procedure Act (APA), which provides:
Any person compelled to appear, or who appears voluntarily, before any hearing officer or agency in an investigation or in any agency proceeding has the right, at his own expense, to be accompanied, represented, and advised by counsel or by other qualified representatives.
The Joint Petition and Stipulation indicates his conduct before the DOAH officer included:
1) Presentation of evidence;
2) Examination and cross-examination of witnesses;
3) Voir Dire;
4) Making both written and oral motions and arguing same;
5) Objecting to evidence and arguing thereon;
6) Making decisions affecting important legal rights and obligations of his clients;
7) Filing written pleadings.
On the final day of the hearings and before the Board presented its case, a member of The Florida Bar appeared as co-counsel with respondent and moved for a continuance. When this motion was denied, the attorney announced the Board would not proceed further and the hearing was concluded. As a result of these proceedings, PERC ruled in favor of the Union and ordered the Board to cease and desist those actions which gave rise to the ULP charges. That decision was affirmed on appeal. School Board of Escambia County v. Public Employees Relations Commission, 350 So.2d 819 (Fla. 1st DCA 1977).
The Bar does not seek to have respondent held in contempt in light of his reliance on PERC's regulation, instructions from the DOAH hearing officer, and respondent's cooperation in bringing this petition to ascertain the proper role of labor consultants in unfair labor practice proceedings. Amici curiae, the attorney general, and the Florida Education Association have also filed briefs in this case.

Whether Representation Before PERC Constitutes the Practice of Law
The difficulty inherent in defining the practice of law was noted recently, in The Florida Bar v. Brumbaugh, 355 So.2d 1186, 1191 (Fla. 1978), where we reiterated the broad guidelines by which each person's conduct must be gauged:
... if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law. Sperry, supra, 140 So.2d at 591.
The Bar contends that ULP charges affect important legal rights surrounding the management-union relationship. We agree. These are serious allegations which mandate a hearing upon the finding of a prima facie violation. Section 447.503(3)(a), Florida Statutes (1975). As a result of evidence produced at the hearing PERC may enter a cease and desist order or require positive action, including reinstatement of employees with or without back pay. Section 447.503(4)(a), Florida Statutes (1975). These orders are subject to appellate review in the district courts of appeal. Section 447.503(5), Florida Statutes (1975). They are enforceable by petition to the district courts which may also provide injunctive relief based on the agency action. Section 447.503(6)(a), Florida Statutes (1975). In the instant proceeding PERC in fact ordered the Board take affirmative steps and the order was affirmed by the First District Court of Appeal. School Board of Escambia *415 County v. PERC, supra. Respondent's actions as the Board's representative affected the progress and outcome of the hearing and thus affected the Board's legal rights under Chapter 447.
Next, the Bar contends that because of the applicable procedures, representatives at ULP hearings must possess legal skill and knowledge beyond that of the average citizen in order to protect a party's legal rights. This hearing was governed by the APA, chapter 120, Florida Statutes (1975). Under the provisions of the APA, where substantial interests of a party may be determined by an agency and there are disputed issues of material fact, a so-called "formal proceeding" is required. Section 120.57(1), Florida Statutes (1975). The Bar has detailed at great length the procedural similarities between formal administrative hearings and a civil action in the judicial system. While it is true that these proceedings are comparable to court proceedings in many ways, State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977), and have been described as "trial-type hearing[s]," McDonald v. Department of Banking and Finance, 346 So.2d 569, 578 (Fla. 1st DCA 1977), the law is well settled that they are not actions at law in the judiciary. Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (Fla. 1973) (on rehearing). Furthermore, our focus must be on the character of the services rendered and acts performed rather than the nature of the agency or forum. The Florida Bar v. Sperry, supra.
A cursory examination of respondent's activities reveals what appear to be the classic functions of an attorney. To some extent these actions were governed by procedures outlined in Florida's APA which ostensibly require some legal knowledge to understand and apply. See, e.g., sections 120.57(1)(b) 2a, c, Florida Statutes (1975). Nonetheless, the draftsmen of the 1974 revision of chapter 120 clearly intended to increase flexibility and informality in the administrative process by expanding public access to agency rationale and action, consistent always, however, with minimal administrative due process rights for those whose rights are affected by agency action. Reporter's Comments on the Proposed Administrative Procedure Act for the State of Florida, March 9, 1974, at pp. 3, 5.
Under the APA, a party or its representative must have some knowledge of jurisdiction and supporting legal authority to file the initial notice. Section 120.57(1)(b)2b, Florida Statutes (1975). Similarly, one must be prepared to apply and interpret the Florida Rules of Civil Procedure as they relate to discovery. Section 120.58(1)(b), Florida Statutes (1975). The judicial rules of evidence may not be in full force, but the concept of hearsay must be understood as its use is limited to corroboration "unless it would be admissible over objection in civil actions." Section 120.58(1)(a), Florida Statutes (1975). In obvious recognition of the legal nature of the processes and their ramifications, the APA itself extends authority for party representation by non-lawyers only to "qualified" lay representatives. Section 120.62(2), Florida Statutes (1975).
Certainly it is arguable that a person need not have three years of legal education to master subjects such as jurisdiction, hearsay, and discovery for the limited purpose of representation at a formal hearing on ULP charges. A modicum of competent instruction might well lead to competent representation. This is not the situation under the facts at bar, however. Respondent was not required by any rule or regulation to demonstrate that his knowledge of these, or other legal concepts, was any greater than that of the average citizen or unique for ULP matters.
Respondent does not seriously contest the fact that he represented the Board's interests in an adversary administrative proceeding. He urges us to consider other factors such as his expertise in the labor relations field and concomitant legal knowledge; the fact that all legal decisions were made by the Board's house counsel or specially hired labor law firm; and the economic impediments to requiring attorneys at these proceedings. Similarly, amici argue that *416 trained labor relations specialists who are more familiar with the collective bargaining process and the "law of the shop" make better advocates in ULP proceedings than do attorneys. Amici contend that denying specialized lay representation affects constitutional rights and is economically unfeasible.
It is true that mere application of the Sperry definition will not suffice. The practice of law touches upon virtually every economic and social facet of our lives today. This is especially true in the administrative arena where more and more of our rights are being determined initially.
Other jurisdictions have considered the question of what constitutes the practice of law before administrative bodies. In Re: Unauthorized Practice of Law, 175 Ohio St. 149, 192 N.E.2d 54, 2 A.L.R.3d 712 (1963); Denver Bar Association v. Public Utilities Commission, 154 Colo. 273, 391 P.2d 467, 13 A.L.R.3d 799 (1964). These decisions reflect the line drawing which courts must engage in when governed by broad definitional guidelines such as ours in Sperry. One commentator's denomination of the question as "controversial" more than forty years ago is equally accurate today. Robinson, Appearances by Laymen in a Representative Capacity before Administrative Bodies, 5 Law and Contemp. Prob. 89, 89 (1938). These thorny questions need not trouble us, however, in light of Florida's constitutional and statutory approach to administrative agencies. At this juncture in our analysis it is sufficient to observe that the representation of a party in a contested ULP proceeding does constitute conduct which is the practice of law.
We pause in analysis, however, to note two asserted constitutional bases for lay representation in ULP proceedings which must be rejected. Respondent maintains that article I, section 6 of the Florida Constitution mandates a right to lay representation. This reading goes too far. An employee's right to bargain collectively by and through a union or other labor organization is not abridged by requiring competent, responsible representation at formal hearings on ULP charges. We are not dealing with a party's right to self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Respondent admits he appeared in a representative capacity for the Board. Cf. Nicholson Supply Co. v. First Federal Savings & Loan Association, 184 So.2d 438 (Fla.2d DCA 1966) (right of self-representation does not allow non-attorney corporate officers to represent their corporation). Nor does the first amendment support a right to lay representation. "[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment... . [T]hat right would be a hollow promise if courts could deny association of workers or others the means of enabling their members to meet the costs of legal representation." United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 585-86, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971) (emphasis supplied). Similarly, "the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives [the Union] the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights." UMW of America v. Illinois State Bar Association, 389 U.S. 217, 221-22, 88 S.Ct. 353, 355, 356, 19 L.Ed.2d 426 (1967) (emphasis supplied). Reliance on these decisions is misplaced. The Court speaks only to the employees' ability to retain legal counsel to protect constitutionally guarded rights; at no point does the Court acknowledge a right to unfettered lay representation.

Who Governs the Practice of Law Before Agencies
Having concluded that respondent's conduct constitutes the practice of law, the next question is whether this Court, the legislature, or an agency can control it  that is, whether respondent's conduct was authorized representation before an agency or the unauthorized practice of law subject to this Court's control.
*417 The single most important concern in the Court's defining and regulating the practice of law is the protection of the public from incompetent, unethical, or irresponsible representation. The Florida Bar v. Brumbaugh, supra; The Florida Bar v. Sperry, supra. It is in furtherance of this purpose that this Court maintains strict standards of competence and ethical responsibility to be reached prior to admission to practice law in Florida. Once admitted, a person must continue to adhere to these standards or suffer the disciplinary powers residing in this Court by constitutional mandate. Article V, section 15, Florida Constitution. Inherent in our supervisory power is the authority to prohibit the unauthorized practice of law. Fla. Bar Integr. Rule, art. XVI. Implicit in the power to define the practice of law, regulate those who may so practice and prohibit the unauthorized practice of law is the ability to authorize the practice of law by lay representatives. The unauthorized practice of law and the practice of law by non-lawyers are not synonymous. Brickman, Expansion of the Lawyering Process through a New Delivery System: The Emergence and State of Legal Paraprofessionalism, 71 Colum.L.Rev. 1153, 1209-10 (1971); Section 454.23, Florida Statutes (1977) ("Any person not licensed or otherwise authorized by the Supreme Court of Florida... ." who practices law is guilty of a first degree misdemeanor) (emphasis supplied); Fla. Bar Integr. Rule, art. XVIII (qualified law students authorized to represent clients in legal intern programs).
Respondent and amici would have this Court authorize lay representation by specialists such as respondent on the assumption they possess the requisite knowledge and skill by virtue of their expertise in labor relations and knowledge of the case. In Auerbacher v. Wood, 139 N.J. Eq. 599, 53 A.2d 800 (Ch. 1947), aff'd 142 N.J. Eq. 484, 59 A.2d 863 (N.J. 1948), the lower court refused to formulate a per se rule that lay representation in the adjustment of grievances and collective bargaining process constituted the practice of law. In affirming, the appellate court cautioned that one would not be allowed to practice law under "the guise of specialized service in the sphere of labor relations." 142 N.J. Eq. at 486, 59 A.2d at 864. Even the lower court limited the permissible activity to situations where the legal question was subordinate to a major non-legal problem. 139 N.J. Eq. at 602, 53 A.2d at 802. Auerbacher also dealt with practice before the National Labor Relations Board and federal statutes which preempt state regulation of such practice. In Re: Petition of Kearney, 63 So.2d 630 (Fla. 1953). That facet of Auerbacher and other like cases  preemption  has a corollary in our constitution which is the critical feature of this issue. This Court has no control over the agencies of this state, and any attempt to exercise it would violate article II, section 3 of the constitution which states:
No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
In the absence of legislative authorization for lay representation, there would be no question that conduct which constitutes the practice of law, wherever performed, is subject to our constitutional responsibility to protect the public from the unauthorized practice of law. We have so held in finding that, absent legislative governing authority, the preparation and filing of a corporate charter constitutes the unauthorized practice of law. The Florida Bar v. Town, 174 So.2d 395 (Fla. 1965), followed in The Florida Bar v. Keehley, 190 So.2d 173 (Fla. 1966); The Florida Bar v. Fuentes, 190 So.2d 748 (Fla. 1966); and The Florida Bar v. Scussel, 240 So.2d 153 (Fla. 1970). See also The Florida Bar v. Turner, 355 So.2d 766 (Fla. 1978). But the legislature has constitutional authorization to oust the Court's responsibility to protect the public in administrative proceedings under article V, section 1 of the Florida Constitution, and when it does so any "practice of law" conduct becomes, in effect, authorized representation. That, we find, is the situation here.
PERC is unquestionably subject to the APA, and the APA has unquestionably *418 authorized representation before PERC by non-lawyers. Sections 120.52(1)(b), 120.62(2), Florida Statutes (1975). PERC has acknowledged the authorization and has purported to allow lay representation in contested ULP proceedings. Fla. Admin. Code Rule 8H-4.13(a). Other agencies have done the same, either directly such as the Public Service Commission, or by acquiescence to the model rule adopted by the governor and cabinet sitting as the Administration Commission. Fla. Admin. Code Rules 25-2.10-.19; 28-5.03. In a similar vein, federal agencies promulgate rules and regulations governing the competence and conduct of persons practicing before them. See F.T. Vom Baur, Standards of Admission to Practice before Federal Administrative Agencies, in Survey of the Legal Profession (1953); Address by Professor Gellhorn, Qualifications for Practice before Boards and Commissions, Cincinnati Conference (Mar. 1, 1941), printed in Law and Lawyers in the Modern World, 15 Cin.L. Rev. 123, 196-99 (1941); 5 U.S.C. § 555(b) (1977).
Having identified legislative authority to characterize respondent's conduct as authorized representation before PERC and PERC's attempt to accommodate that authorized representation, however, does not end our inquiry. There is always the residual question in rule related proceedings as to whether the agency in promulgating a controlling rule has validly exercised delegated authority. Indeed, the APA itself provides the authority to challenge a rule or proposed rule as violative of this requirement. Sections 120.56(1), 120.54(3)(a), Florida Statutes (1975).
Section 120.62(2), it must be remembered, authorizes agencies to permit "qualified" lay representatives to appear in agency proceedings. PERC's rule, on which respondent has relied, made no attempt to set standards for non-lawyer representation, despite this limitation in the delegating statute. Amici meet this issue by suggesting that sufficient standards exist in chapter 120. We do not agree.
There are no specific standards of competence and professional responsibility either in the APA or prescribed by agency rule authorizing representation such as respondent's. Absent such standards, PERC has invalidly exercised delegated authority and we must hold that respondent's conduct constituted the unauthorized practice of law.
We are not here passing on the constitutional adequacy of the qualification standard required by the legislature for participation in agency proceedings. No one has suggested an infirmity in that regard.
To summarize, we began this inquiry with the responsibility of this Court under article V, section 15 of the constitution in the absence of any legislative attempt to govern representation before agencies, and we found that respondent's conduct before PERC in fact constituted the practice of law. We then considered whether the legislature could oust the Court's responsibility in proceedings before agencies, and we found that it could convert such conduct into authorized representation. We next considered whether the legislature had so acted with respect to this agency, and we found that it had through delegation in the APA. Finally, we considered whether PERC's exercise of legislatively-delegated authority was valid, and we found that it was not for lack of standards consistent with the legislative delegation.
From this we conclude that respondent's conduct was not authorized representation, and therefore must be classified as the unauthorized practice of law. In light of the joint petition, however, we refrain from holding respondent in contempt, but enjoin him from further conduct such as that described in the Joint Petition and Stipulation so long as there is no valid exercise of delegated authority by PERC.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.