PER CURIAM.
This cause is before the Court pursuant to jurisdiction granted in article V, section 15, Florida Constitution and article XVI, Florida Bar Integration Rule. Respondent was charged with the unauthorized practice of law; a referee was appointed to conduct hearings, take evidence and issue findings of fact and conclusions of law. We adopt the referee’s report and set it forth herein.
FINDINGS OF FACT
1. Respondent was not and is not a licensed or certified member of the Florida Bar.
2. Respondent is not a licensed Real Estate Broker or salesman in the State of Florida.
3. Respondent maintained offices in the building at 154 Giralda Avenue, Coral Gables, Florida, which contained a law library and offices of other attorneys. A sign on the door of the building, visible to the public, reads “Law Offices” and listed the names of the other attorneys who had offices in the building. Respondent’s office contained a wall display of diplomas from various Universities, including the University of Havana, Juris Doctor in Diplomatic Law; Paris University, Doctor in Financial Sciences; Sorbonne and Heidelberg University; and the Hague Academy of International Law. There was also on display a diploma from the University of Florida Special Program for Former Cuban Lawyers.
The Respondent presented himself in this capacity to the public clothed in the trappings of an attorney.
4. Although on occasion the Respondent appeared on television and was identified by the words “Doctor Ramiro Ar-ango, Abogado,” there was no proof that Respondent either solicited said identification nor knew at the time that he was being so identified.
5. Respondents appearance on radio talk shows giving advice to callers regarding various subjects, including immigration matters, was not proven by any facts presented during the hearings before the Referee.
*933 6. During the period from March 1977 to March 1978, Respondent managed the law offices at 154 Giralda Avenue, Coral Gables, Florida, and supervised the work of several attorneys, including Blas E. Padrino. During this period the Respondent referred approximately 150 clients to Mr. Padrino for legal services.
There was no proof that Respondent prepared and filed a Complaint in Small Claims Court and affixed Bias Padrino’s name to the document without Padrino’s knowledge or permission.
There was no proof Respondent impersonated attorney Padrino during a telephone call Respondent allegedly conducted with an insurance adjustor.
Mr. Padrino testified that a client told him Respondent advised the client to testify falsely in a civil automobile case, but there was no testimony presented from the client at any hearing conducted by this Court.
7. Elisa Tamayo went to Respondent’s office in the belief that he was an attorney, for the purpose of helping her with an immigration matter. Miss Ta-mayo based her belief that Respondent was an attorney upon the trappings of the office, the diplomas on the wall, and a card on Respondent’s desk which read “Doctor Ramiro Arango.” Miss Tamayo entered an agreement with Respondent that in return for his services in the immigration matter, Respondent would deduct a fee from funds which were due Miss Tamayo from a previous automobile accident case that Respondent allegedly was handling for a Mr. Rollo Karkeet who was reported to be the attorney for Miss Tamayo and her mother in the automobile case. Respondent never advised Miss Tamayo that he was not an attorney of law, licensed to practice in the State of Florida. There is in evidence a G-28 form which purports to contain the signature of Rollo Kar-keet. Miss Tamayo claims this form was signed in blank by her when she consulted Respondent, and that at no time did Mr. Karkeet sign that document in her presence. Rollow Karkeet testified that he never did any immigration or naturalization legal work for Mr. Jose Tamayo or Miss Elisa Tamayo nor did Mr. Karkeet file a G-28 form for them.
8. Respondent assisted Magdalena Serra in the purchase of a home at 1425 Obispo, Coral Gables, in Dade County and drafted and prepared the Deposit Receipt and Sales Purchase Agreement for the sale of said residence. Respondent signed the document described above as escrow agent Ramiro Arango by Mary L. Dennis Law Office and accepted receipt of a $1,000 deposit and also $500 designated lawyer fees for “closing 1425 Obispo,” said check being made payable to Ramiro Arango.
9. Respondent, on behalf of Camille Castro, prepared and drafted a contract between Moisés Marcel Quizman and Camille Castro for the sale of four shares of Maraca Corporation stock for the price of $166,667. This matter eventually ended in a law suit being filed regarding the shares in question.
10. Respondent prepared the Deposit Receipt and Sales Purchase Agreement for the purchase of real property, the “Sensations Nightclub” between Maraca Corporation and Moisés Quizman. Respondent had dealings with the seller’s attorney Mr. Leslie Schere in a manner consistent with that of an attorney representing the buyer, and in said capacity, discussed price, terms, legal problems, payments of monies, mortgage foreclosure matters, and complaints regarding the leakage of the roof. The contract in question did not provide for a roof guarantee clause. This resulted in damage being suffered by the buyer and eventual foreclosure action in June of 1980.
11. Respondent prepared Articles of Incorporation for Anyway Realty Corp., and received payment of $100 from Miss Daisy Alvarez for the purchase of *934 the corporate seal. The preparation of the Articles of Incorporation caused the corporation to be formed and filed with the Secretary of State in Tallahassee.
12. Documents regarding the sale of the property in the above stated matters were signed by attorney Mary Dennis, although Respondent admits drafting and preparing those documents and meeting and discussing the case with the parties involved.
CONCLUSIONS OF LAW
1. Respondent engaged in the practice of law in that he held himself out to the public as an attorney by taking advantage of the trappings of the office of an attorney in setting labeled “law offices.” Respondent dealt with the public, who sought legal advice, without informing the public that he was not licensed to practice law.
2. Respondent engaged in the practice of law by preparing contracts for Deposit Receipt and Sales Purchase Agreements for the property described in (7), (8) and (9) above in the Referee’s Finding of Fact. Keyes Co. v. Dade County Bar Ass’n, 46 So.2d 605 (Fla.1950).
3. Respondent engaged in the practice of law by advising Miss Tamayo about certain immigration matters and agreed to accept a fee therefore. State of Florida ex rel. The Florida Bar v. Alexander T. Sperry, 140 So.2d 587 (Fla.1962).
4. Respondent engaged in the practice of law by preparing the Articles of Incorporation for Anyway Realty Corporation. The Florida Bar v. Town, 174 So.2d 395 (Fla.1965).
Although Respondent alleges that he acted merely in the capacity of an office manager, managing the law firm for Rollo Karkeet, there is no evidence to support the fact that Rollo Karkeet ever engaged Mr. Arango in said capacity nor authorized him to operate and run a law practice in Mr. Karkeet’s name. It is obvious that in his capacity the Respondent engaged in such practices that would affect the rights of individuals in the formation of corporations and the sale of purchase of property and shares of stock. This activity would require a certain expertise in the field of law.
Respondent attempts to justify his activities with regard to the matters enumerated above by claiming that he merely acted as a conduit for another attorney. He claims that all he did was to initially interview a client, fill in the blanks on the form for which he had already received information and then conferred with the attorney for the final preparation of said forms. Some of these allegations are disputed by the facts and evidence in this case. The evidence, however, indicates that this was not the limit and extent of the services rendered by Respondent. Said services bordered on the giving of advice and assisting a “client” in the preservations of the client’s rights and interests in matters which have been considered legal in nature.
It is settled that a person licensed in the sale and brokerage of real estate may prepare deposit receipts and sales purchase agreements, but in this case Respondent is neither a real estate broker or salesman nor attorney at law and in neither capacity could lawfully engage in such activities.
The manner in which Respondent held himself out to the public by maintaining his offices where he did, and in the manner in which he did, gave leave to the public to expect that he was as he seemed to be, an attorney at law, and therefore engage him in the preservation of their rights and interests. Such activity can in no way be considered, as Respondent would have one believe, the practice of “business consultant” or “office manager.” This case would appear quite similar to the case of the Florida Bar v. Fuentes, 190 So.2d 748 (Fla.1966) in which the Respondent was found in violation of *935 the law in that he engaged in the unlawful practice of law under circumstances similar to the one enumerated above.
The referee recommended that respondent be enjoined from further unauthorized practice of law and, further, that respondent be adjudicated guilty of indirect criminal contempt and punished in accordance with article XVI, III (B)(2) of the Florida Bar Integration Rule, by levying of a fine of $2,500 and confinement for five months. Respondent protests the recommended sentence, claiming to have been prevented from presenting evidence in mitigation. However, the record shows that respondent voluntarily waived the sentencing proceeding in open court to which he was entitled and at which such evidence could have been presented. The choice was the respondent’s and no error has been committed.
We have accepted the referee’s recommendation that respondent be permanently enjoined from the unauthorized practice of law. The order to that effect issued from this Court September 20, 1983. In light of these findings of fact and conclusions of law, and this Court’s handling of similar cases, we sentence respondent to one hundred twenty days in jail and suspend ninety days of that sentence. When this opinion becomes final, the sheriff of Dade County is authorized and directed to take respondent into custody and to confine him for thirty days. If respondent does not violate the terms of our continuing injunction for a period of two years, the suspended term of ninety days shall be deemed satisfied. Costs in the amount of $2,931.79 are assessed against respondent, for all of which let execution issue.
It is so ordered.
ADKINS, OVERTON, ALDERMAN and EHRLICH, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion.