PER CURIAM.
In accordance with the provisions of rule 10-7.1 of the Rules Regulating The Florida Bar, Stephen R. Moorhead filed a petition for an advisory opinion with respect to whether certain conduct constituted the unlicensed practice of law. After holding a public hearing at which testimony was presented, the Florida Bar Standing Committee on the Unlicensed Practice of Law (Committee) issued a proposed advisory opinion with respect to the following question:
Is it the unlicensed practice of law for a nonlawyer to prepare the Notice To Owner required by Fla.Stat. § 713.06(2) and the Notice To Contractor required by Fla.Stat. § 713.23(l)(d)?
We review the proposed advisory opinion pursuant to article V, section 15, of the Florida Constitution, and rule 10-7.1(g) of the Rules Regulating The Florida Bar.
In order to put the question in context, the proposed advisory opinion described the mechanics’ lien law requirements for the Notice to Owner (NTO) and Notice to Contractor (preliminary notice) as follows:
When working on a job where a payment bond has not been provided, the lienor is required to serve a NTO as the first step in perfecting the lien. Fla.Stat. § 713.06(2). The NTO must be furnished by all lienors, except laborers, who are not in privity with the owner. Lienors in privity (§ 713.05), professional lienors (§ 713.03), and lienors who make the site suitable for improvement (§ 713.04) are not required to serve a NTO. The NTO must contain the lienor’s name and address, a description of the property, and the nature of the services or materials to be furnished. Section 713.06(2) sets forth a form which may be used as the . NTO.
The NTO must be served on the owner and any other person designated in the Notice of Commencement before commencing or within forty-five (45) days of commencing to furnish materials and services. Failure to serve the notice on designated persons, other than the owner, does not invalidate the lien nor does the NTO act as a lien, cloud, or encumbrance on the property. Lienors working for a subcontractor must serve a *1014 copy of the NTO on the contractor. Lienors working for a sub-subcontractor must serve the NTO on the subcontractor and the contractor. Service is defined in Fla.Stat. § 713.18 and includes actual delivery, mailing by certified or registered mail, or, if the above cannot be accomplished, posting on the premises.
When working on a job where a payment bond has been furnished, the preliminary notice, entitled the Notice To Contractor, takes the place of the NTO. Under Fla.Stat. § 713.23(l)(d) if a bond is furnished, a lienor not in privity with the owner, except a laborer, must serve the contractor a notice that he will look to the bond for payment. The notice must be served within 45 days after beginning to furnish labor, materials, or services; however, if the lienor does not know of the existence of the bond, he shall have 45 days from the date he is notified of the bond to serve the notice. Failure to record and serve the preliminary notice precludes an action against the contractor or surety for recovery under the bond.
The statute sets forth a form which may be used as the preliminary notice. The form contains blanks for the name of the contractor, the nature of the services or materials furnished, a description of the property, the name and address of the owner, and the name of the person who ordered the work.
The Florida Bar Standing Committee on the Unlicensed Practice of Law, Proposed Advisory Opinion of the Florida Bar Standing Committee on the Unlicensed Practice of Law, at 5-6 (Nov. 10, 1988) (on file with the Clerk of the Florida Supreme Court) (footnote omitted) [hereinafter proposed advisory opinion].
The proposed advisory opinion included the following findings of fact:
A. CURRENT PRACTICE
The majority of the NTOs and preliminary notice served today are completed and served by notice to owner services (hereinafter “the industry”). Representatives from six such businesses testified at the public hearing. Although an exact estimate is impossible, the companies present prepare from a few hundred to a few thousand notices each month, a volume that most attorneys could not handle. The average cost of preparing the notices is twenty-five dollars ($25.00) per notice.
The standard operating procedure in the industry is for the prospective lienor, the customer, to contact one of the services and provide basic information about the job. The customer will be asked to provide his name and address, the services or materials he is providing, the name of the owner of the property if he knows it, and a general location of the property. The information is taken over the telephone or by filling out an information sheet. The company then verifies the information through a search of the public records in much the same way a title insurance company searches the records. Where possible, the search is done with computers. If the particular county does not have computerized records, an employee of the company may go to the courthouse and search the records. If a company covers more than one county, it may have employees in- the different counties to conduct the search. One document the company may look at is the Notice of Commencement filed by the owner. It is the custom of the industry to combine the NTO required by § 713.06(2) and the preliminary notice required by § 713.23(l)(d) into one document. The verified information is placed on the notice and sent certified mail to the owner and any other individuals required to receive the notice.
In addition to completing and serving the notices, the industry holds seminars and workshops conducted by local attorneys knowledgeable in mechanics' lien law. The industry is in constant contact with their attorneys to learn of any changes or developments in the law. They also keep their customers up to date on notices of commencement and liens filed in their county.
*1015 The only notices which the industry completes and serves are the NTO and preliminary notice. If a customer comes to them requesting a Claim of Lien or Notice of Nonpayment, the customer is told to see an attorney. Generally, the construction industry is aware of the requirements of the mechanics’ lien statute as it is tested on the contractor’s licensing examination. (See also National Gypsum Co. v. Travelers Indemnity Co., 417 So.2d 254 (Fla.1982) wherein the Court found that the construction industry is aware of the requirement to give timely notice.) Any changes in the law can be relayed to the industry through the seminars.
B. PUBLIC HARM
The only testimony the Standing Committee received regarding public harm was the testimony of an attorney who practices in the mechanics’ lien area. He testified that in his fourteen years of practice he has seen a NTO being sent improperly approximately ten times. It was his feeling, and the feeling of many of the other witnesses, that the marketplace takes care of any business that is not completing the notices properly as people will not use their services and the business will eventually close. Besides this testimony, the record is devoid of any evidence of public harm when only these two notices are being completed.
C. SUMMARY OF TESTIMONY
The testimony of all of the witnesses can best be summarized by the following quote from the public hearing:
“MR. SONDAK: Before we hear from anybody else in the industry who does this and is endorsing it, I want to ask at this time, has anybody come down here give testimony or information to us to indicate that these practices ought to be or are the unlicensed practice of law?
Is there anybody who wants to make that case?
(No response.)
MR. SONDAK: As I understand it, it’s come down to the Notice to Contractor, Notice to Owner documents, not the Claim of Lien document.
Does anybody have a problem or want to tell us where they are concerned about this being done by nonlawyers? (No response.)
Transcript of Public Hearing, June 16, 1988, pp. 88-84.
Proposed advisory opinion at 8-11.
The Committee concluded that the preparation and service of the NTO and the preliminary notice by nonlawyers constituted the practice of law. However, to the extent that nonlawyers are completing the NTO and the preliminary notice with information supplied by the customer, the Committee expressed the opinion that the activity was authorized by the decision in Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla.1978), providing this Court approved the statutory form or some other form of those instruments in accordance with rule 10-1.1(b). The Committee further concluded that the nonlawyer may search the public records to verify the information given by the customer but that if a conflict was found, the nonlawyer should only inform the customer of the conflict and should not attempt to resolve it or give legal advice. Its conclusion was summarized as follows:
After receiving testimony and reviewing the applicable law, it is the opinion of the Standing Committee on the Unlicensed Practice of Law that nonlawyer preparation and completion of the Notice To Owner and preliminary notice, although the practice of law, is authorized. Therefore, nonlawyers may complete and serve the notices. The nonlawyers may not, however, give legal advice, advise their customers in matters involving the mechanics’ lien statute, or complete any other forms required or allowed by the mechanics’ lien statute. This opinion applies to the Notice To Owner (Fla.Stat. § 713.06(2)(a)) and preliminary notice (Notice To Contractor, Fla.Stat. § 713.23(l)(d)) only and any other form or notice contained in the mechanics’ lien statute or elsewhere is not covered by this proposed advisory opinion.
Proposed advisory opinion at 19.
The National Association of Credit Management of Florida, Inc. (Association) *1016 has filed an amicus curiae brief. While agreeing with the Committee’s findings of fact, the Association takes issue with the conclusion that nonlawyer preparation of the NTO and the preliminary notice including communicating with lienors regarding information necessary to fill in the blank forms for these instruments constitutes the unlicensed practice of law. The Association requests that this Court not adopt the position of the Committee that nonlawyers not be allowed to communicate with their customers
regarding the information utilized on the form, the practical advantages of attempting to serve by certified mail, return receipt requested, as opposed to hand delivery or posting on the job site due to time constraints, the need for serving more than just an original Notice to Owner on the Owner, and the appropriateness or lack thereof of serving a Notice where the time period within which to serve same may have already expired, based upon a mathematical computation of the 45 day time limit from the furnishing of the first materials, labor or services to the job site.
Amicus Curiae Brief of National Association of Credit Management of Florida, Inc. at 8-9.
In State v. Sperry, 140 So.2d 587, 591 (Fla.1962), vacated on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), this Court said:
We think that in determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.
However, in Florida Bar v. Brumbaugh, we noted that the Sperry definition was broad and is given content by this Court only as it applies to the specific circumstances of each case.
We agree that “any attempt to formulate a lasting, all encompassing definition of ‘practice of law’ is doomed to failure ‘for the reason that under our system of jurisprudence such practice must necessarily change with the everchanging business and social order.’ ” State Bar of Michigan v. Cramer, supra, 399 Mich. 116, 249 N.W.2d [1] at 7.
355 So.2d at 1191-92.
Accepting the Committee’s findings of fact, we are not persuaded that the practice of the “industry” as described in the Committee’s report constitutes the unlicensed practice of law. As noted by the Committee, the construction industry, which is served by those who fill out the forms, is aware of their significance and generally knowledgeable of the requirements pertaining to the perfection of mechanics’ lien rights. The two forms in question are statutory forms requiring only a minimum of information which may be easily obtained from the customer or the public records. The decisions concerning the manner of service are largely dictated by the statutes and appear to be incidental to the preparation of the forms. Substantial compliance with the furnishing of these notices will not defeat a claim against a person who has not been adversely affected. § 713.06(2)(d), Fla.Stat. (1987). Walter E. Heller & Co. Southeast, Inc. v. Palmer-Smith, 504 So.2d 511 (Fla. 5th DCA 1987). There has been no showing that the public is being harmed by the preparation of these forms by nonlawyers.
Thus, we conclude that it is not the unlicensed practice of law for nonlawyers to engage in communications with their customers for the purpose of completing the NTO forms and preliminary notice forms as that activity is described in the Committee report. However, we agree that the nonlawyer may give no legal advice in connection with the preparation and service of *1017 the notices. Our opinion is limited to the NTO and the preliminary notice. In view of our disposition of the matter, it is unnecessary for us to consider whether this Court should adopt any forms to be used for these notices.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, shaw, barkett, GRIMES and KOGAN, JJ., concur.