689 So.2d 255 (1997)
THE FLORIDA BAR, Complainant,
v.
AMERICAN SENIOR CITIZENS ALLIANCE, INC., et al., Respondents.
No. 82781.
Supreme Court of Florida.
February 27, 1997.
*256 Lori S. Holcomb, Assistant Unlicensed Practice of Law Counsel, Tallahassee, and Richard P. Reinhart of McMillen & Reinhart, P.A., Bar Counsel, Orlando, for Complainant.
Stephen D. Milbrath of Allen, Dyer, Doppelt, Franjola & Milbrath, Orlando, for Respondents.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding the alleged unlicensed practice of law by respondent American Senior Citizens Alliance (ASCA) and D. Christopher Russell and Carol Russell, the owners and senior officers of ASCA.[1] We have jurisdiction pursuant to article V, section 15 of the Florida Constitution. Respondents have filed neither a petition for review of the referee's findings of fact or conclusions of law, nor a motion for rehearing.
The record reflects that the Bar filed a twelve-count complaint against ASCA, alleging that the corporation and its employees were engaged in the unlicensed practice of law. The Honorable Susan W. Roberts, circuit judge, was appointed to this case as referee on March 28, 1994, and conducted a hearing on March 26, 1996, at which time a motion for final summary judgment was granted in favor of the Bar.
ASCA, a for-profit corporation owned and managed exclusively by nonlawyers, was in the business of creating and selling complex estate planning documents including living trusts, wills, durable powers of attorney and other related legal documents. ASCA was headquartered in Orlando but operated throughout Florida. ASCA employed licensed attorneys as in-house counsel but relied upon paralegals, customer service representatives and salespeople to contact customers and sell them estate planning devices.
ASCA solicited prospective customers through direct mass mailings which offered the preparation of a living will at no charge if a customer contacted the company and set up an appointment to meet with a salesperson in the customer's home. At the appointment, the salesperson made a standardized sales pitch designed to convince the customer that estate planning devices such as wills, joint tenancies, and the like were inferior to the ASCA living trusts. The sales pitch was a "high-pressure" presentation designed to exploit the elderly customer's common fears *257 and misunderstandings surrounding probate processes. The pitch included a detailed description of how living trusts work, the duties of a trustee and how one should be chosen, and the legal process concerning a person's death, disability or incompetency. The salespersons regularly answered specific legal questions for the customer and gave tailored legal advice regarding how a particular estate planning device would affect the customer's particular life circumstances. Finally, the customer was told that an attorney would be drafting her living trust.
When a customer bought a living trust from ASCA, the salesperson gathered information about the assets the customer owned and collected at least half of the drafting fee, ranging from $695 to $1,495, at the appointment. None of this money was placed in a protective escrow but instead was deposited into respondent's general account. The fee, along with the package drawn up by the salesperson, was then sent to ASCA's Orlando office.
A paralegal in the Orlando office received the information and prepared the trust and related documents using standardized forms on ASCA's computer data base. These forms contained approximately fifty pages of boilerplate language, and in most cases only two pages were modified. When a paralegal received several packages at one time, one of ASCA's managersnone of whom were lawyers prioritized the packages based primarily on monetary considerations (i.e., trusts for which money was still owed were completed first so that ASCA would promptly receive additional payment). Paralegals also prepared the deeds and other papers necessary for funding a customer's trust.
Finally, an in-house attorney reviewed the completed trust package. The customer did not choose the attorney who reviewed her paperwork. Many trusts contained incorrect information, which was not corrected even if known, or were inadequately funded and resulted in negated trusts. The ASCA nonlawyer owner and managers had access to all customer files and attorney work product. Confidential personal information that ASCA customers gave to salespersons was secretly provided to an insurance/annuity affiliate of ASCA to be used later for "prospecting."
Most ASCA customers never had any communication with ASCA in-house attorneys either by telephone or in writing. Nor did the ASCA lawyers normally ascertain whether the individual customer knew what a living trust was or whether the trust was appropriate for her. Customers who called with legal questions were deliberately routed to a nonlawyer employee, and the few appointments made with attorneys at the ASCA offices were kept to a maximum of forty-five minutes by employees interrupting and falsely stating that the lawyer had another appointment. Because decisions on whether a particular customer needed a living trust and the type of trust best suited for that customer were made by the lay salesperson at the time of the sales presentation, the in-house lawyer's role at the last stage of ASCA's trust processing was limited to making a cursory review of the forms before the documents were mailed back to the customer for execution of the trust.
The referee found that ASCA improperly solicited customers for the purchase of legal instruments; made repeated misrepresentations; shared fees with nonlawyers; commingled advance fee payments with operating funds; restricted the exercise of independent professional judgment of corporate lawyers; made repeated advertising violations; failed or refused to communicate with clients; and disclosed confidences for profit. The referee further found that customers paid for legal advice that was never received and the ASCA practices resulted in great harm to elderly members of the public. The referee concluded that a lawyer participating in these same activities would be subject to sanction by The Florida Bar.[2]
Additionally, the referee found that respondent improperly relied upon the language in Florida Bar re Advisory Opinion Nonlawyer Preparation of Living Trusts, *258 613 So.2d 426, 428 (Fla.1992),[3] as permitting ASCA's practice of entering the homes of its elderly victims and giving legal advice rather than merely gathering information. Because respondent's unlicensed conduct was based, at least in part, on a purported misconstruction of this Court's caselaw, the referee recommended that this Court issue an opinion in this case clarifying the language in its prior decisions and more specifically defining what is meant by "gathering the necessary information" in connection with living trusts.
We have reviewed the record in this case and find that the referee's findings of fact are supported by competent, substantial evidence. As to the referee's request that we issue an opinion in this case clarifying the meaning of the phrase, "gathering necessary information," this Court has addressed the types of activities that go beyond information gathering by lay persons and constitute the unlicensed practice of law on at least two prior occasions.
For instance, in Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla.1978), The Florida Bar filed a complaint against Brumbaugh, a self-employed secretary who advertised typing services for "Do-It-Yourself" divorces, wills, resumes, and bankruptcies, alleging that Brumbaugh was practicing law without a license. Id. at 1189. For a fee, Brumbaugh prepared the necessary documents for pleading, filing, and securing a dissolution of marriage, as well as "detailed instructions as to how the suit should be filed, notice served, hearings set, trial conducted, and the final decree secured." Id. at 1190. Further, we noted that had Brumbaugh limited her activities to selling printed material purporting to explain legal practices in general, or selling sample legal forms, such activities would not have fallen under the aegis of practicing law. Id. at 1194. Additionally, had Brumbaugh typed forms for her clients, provided she copy only the information given to her in writing by her clients, this too would have been acceptable. However, we ultimately concluded that Brumbaugh's activities constituted the unlicensed practice of law because (1) her customers relied on her to properly prepare the necessary forms for the legal proceeding of a marriage dissolution; (2) she advised clients as to various remedies available to them, or otherwise assisted them in preparing the necessary forms; and (3) she inquired into or answered questions of her clients to determine which forms would be necessary, how best to fill out these forms, and how to present the necessary information in court. Id. at 1193-94.
We further explained that the giving of expert legal advice and performance of professional legal services constitutes the unlicensed practice of law:
[I]f the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitutes the practice of law.
Id. at 1191 (quoting State ex rel. Fla. Bar v. Sperry, 140 So.2d 587, 591 (Fla.1962)).
More recently, we addressed the issue of the unlicensed practice of law in the preparation and sales of living trusts in Florida Bar re Advisory OpinionNonlawyer Preparation of Living Trusts, 613 So.2d 426 (Fla. 1992). In that case, American Family Living Trust petitioned the Florida Bar Standing Committee on the Unlicensed Practice of Law for an advisory opinion concerning:
Whether it constitutes the unlicensed practice of law for a corporation or other nonlawyer to draft living trusts and related documents for another where the information to be included in the living trust is gathered by nonlawyer agents of the corporation or by the nonlawyer and the completed documents are reviewed by a member of The Florida Bar prior to execution.
Id. at 426. Upon reviewing similar requests from other parties, the Standing Committee *259 held hearings, gathered both oral and written testimony, and subsequently proposed that this Court issue an opinion finding that nonlawyer companies which sell living trusts are engaged in the unlicensed practice of law and the public is or could be harmed by this practice. Id. at 427. This Court accepted jurisdiction, reviewed the proposed opinion and explained that the assembly, drafting, execution, and funding of a living trust document constituted the practice of law and that a licensed attorney must make the "determination as to the client's need for a living trust." Id. at 427. We further noted that the giving of legal advice concerning the application, preparation, advisability or quality of any legal instruments or forms in connection with inter vivos or testamentary trusts by a lay person also constituted the unlicensed practice of law. Id. (citing In re Florida Bar, 215 So.2d 613, 613-14 (Fla. 1968)). Nevertheless, we found that because the "gathering of the necessary information for a living trust" did not constitute the unlicensed practice of law, nonlawyers may properly perform this activity. Id.
In light of our caselaw thoroughly discussing the unlicensed practice of law in Brumbaugh and Living Trusts, we find that ASCA's purported reliance on our language in Living Trusts as condoning its activities here is an unreasonable interpretation of the phrase "gathering the necessary information." Under the untenable guise of "gathering information," nonlawyer ASCA employees answered specific legal questions; determined the appropriateness of a living trust based on a customer's particular needs and circumstances; assembled, drafted and executed the documents; and funded the living trusts in direct violation of our clear admonitions to the contrary in Brumbaugh and Living Trusts. The particularized legal advice and services rendered by ASCA's nonlawyer employees clearly constituted the unlicensed practice of law.
Pursuant to the referee's request, we find that ASCA's conduct here constituted the unlicensed practice of law and was far more than the mere "gathering of the necessary information for a living trust." Consequently, we approve the referee's findings of fact and conclusions of law in this case pursuant to Brumbaugh and Living Trusts. We hereby enjoin the respondent from the unlicensed practice of law as specified in the referee's report.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The Bar began discovery of ASCA in the summer of 1994. During that time, the Internal Revenue Service filed a tax lien against ASCA and the Florida Attorney General's office filed a consumer fraud action against ASCA. On June 8, 1994 ASCA filed a petition in the United States Bankruptcy Court seeking relief under Chapter 7 of the U.S. Bankruptcy Code. In August 1994, the Bankruptcy Court granted the Bar's motion seeking relief of the automatic stay created upon ASCA's filing of the bankruptcy action and allowed this action to proceed insofar as it sought injunctive relief against the debtor and its principals.

The Bar amended its petition to include the Russells, primarily because ASCA filed bankruptcy during these proceedings and Mr. Russell had previously been involved with two other living trust companies. The Bar wanted to ensure that the Russells did not open another similar corporation and thereby escape any injunctions the Supreme Court might issue.
[2] Rule of Professional Conduct 4-5.5 of the Rules Regulating The Florida Bar provides: "A lawyer shall not ... (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law."
[3] In Florida Bar re Advisory OpinionNonlawyer Preparation of Living Trusts, 613 So.2d 426 (Fla. 1992), we stated: "However, consistent with this Court's opinion in Raymond James, gathering the necessary information for the living trust does not constitute the practice of law, and nonlawyers may properly perform this activity." Id. at 428.