696 So.2d 1178 (1997)
THE FLORIDA BAR RE ADVISORY OPINION ON NONLAWYER REPRESENTATION IN SECURITIES ARBITRATION.
No. 89140.
Supreme Court of Florida.
June 26, 1997.
*1179 John A. Yanchunis, Chair, Standing Committee on Unlicensed Practice of Law, St. Petersburg, John F. Harkness, Jr., Executive Director and Lori S. Holcomb, Assistant UPL Counsel of The Florida Bar, Tallahassee, and Robert Pearce, Ft. Lauderdale, on behalf of the Standing Committee on Unlicensed Practice of Law.
Richard A. Greenberg, Tallahassee, on behalf of Investment Arbitration Consultants, Inc.; Brian J. Sheen, Non-Attorney, Arbitration Representative, Boca Raton, Robert E. Karoly, President, Vero Beach, on behalf of Securities Arbitration Specialists, Inc.; and Karen F. Klausmeyer, President, Palm City, on behalf of Securities Arbitration Recovery Advisors, Responding.
PER CURIAM.
Pursuant to rule 10-7.1(b) of the Rules Regulating the Florida Bar, Robert Pearce, a Florida attorney, petitioned the Florida Bar Standing Committee on the Unlicensed Practice of Law (the Committee), for an advisory opinion on the following question:
Whether non-attorney companies or individuals who offer advice on securities related matters and represent the public before, during or after any National Association of Securities Dealers (NASD), New York Stock Exchange (N.Y.SE), American Stock Exchange (AMEX), or other stock exchange arbitration proceedings for compensation are engaged in the unauthorized practice of law.
We have jurisdiction to review the proposed advisory opinion pursuant to rule 10-7.1(g) of the Rules Regulating the Florida Bar and article V, section 15, of the Florida Constitution.

*1180 PROPOSED OPINION

The Committee held a public hearing on the matter in June 1996, where both oral and written testimony was received. Following the hearing, the Committee voted to issue a proposed opinion which finds that non-lawyer representatives in securities arbitration who accept compensation for their services are engaged in the unlicensed and unauthorized practice of law, and that the public is actually being harmed and has the potential for being harmed in the future by this practice. Several nonlawyer securities arbitration representatives filed comments as interested parties in opposition to the proposed opinion.
The Standing Committee's proposed opinion is expressly limited to the narrow circumstances in which a securities investor with a claim or claims against a broker is represented before, during or after a securities arbitration to resolve the claim by a nonlawyer retained for compensation.[1] The Committee maintains that a claimant in a securities arbitration is seeking, through a contested and adversarial proceeding, monetary damages allegedly lost as a result of the broker's wrongdoing. The Committee notes that although the investment amount at issue in some cases is substantial, even relatively small claims are significant to modest, individual investors, and, hence, regardless of the amount at issue, these cases clearly implicate the important legal rights of the investor.
The Committee is of the opinion that a nonlawyer who is retained to represent an investor in securities arbitration for compensation is engaged in the unauthorized practice at each of the three stages of representation. Specifically, the Committee finds that the advice given and services rendered before the arbitration affects an investor's legal rights because the representative must determine: (1) whether the investor is compelled to arbitrate under any investor-broker agreement; (2) the effect of eligibility rules and statutes of limitations; (3) the scope of the arbitrator's authority; (4) whether to arbitrate or settle the dispute before filing a claim; (5) the merits of specific claims or defenses; (6) whether attorneys or expert witnesses should be hired to assist in the arbitration; (7) whether the investor should file a petition to stay the arbitration; and (8) the possibility of related or alternative civil actions.
The proposed opinion further details that a nonlawyer representative also is engaged in the unlicensed practice of law during the course of the arbitration proceeding because the representation requires, among other things: (1) conducting discovery and any related depositions; (2) presenting evidence; raising objections; examinations of witness and void dire of experts and opening and closing arguments; and (3) preparing and filing the initial written statements of claims, answers and counter-claims, as well as written and oral motions and legal memoranda concerning the claims at issue.
As to the third stage of representation, the proposed opinion notes that nonlawyer representatives in securities arbitration are engaged in the unlicensed practice of law even after the arbitration proceeding has concluded because any arbitration award or judgment can be confirmed, vacated or collected only through an action at law and not through further arbitration or some alternative proceeding. Finally, the Committee notes that the nonlawyer representative in a securities arbitration has overstepped proper bounds because at each of these stages, and throughout the entirety of the representation, the investor places great reliance on the representative to properly prepare and present his or her case.

LACK OF FEDERAL OR STATE REGULATION
The proposed opinion asserts that this Court may  and should  enjoin the activities of nonlawyer securities arbitration representatives because no federal or state rules or regulations specifically authorize *1181 these nonlawyer representatives to engage in such activities. The proposed opinion explains that securities arbitration is conducted before self-regulatory organizations (SROs), which are private bodies and not federal offices or agencies. The rules governing the SROs at issue here, namely the National Association of Securities Dealers (NASD), the New York Stock Exchange (N.Y.SE), and the American Stock Exchange (AMEX), are approved by the Securities and Exchange Commission (SEC).
The Committee acknowledges, however, that the rules governing the SROs do not expressly prohibit nonlawyer representation, and that the Arbitrator's Manual published jointly by the SRO's and the Securities Industry Association indicates that parties in securities arbitration "may choose to appear pro se (on their own) or be represented by a person who is not an attorney, such as a business associate, friend, or relative." Nevertheless, the Committee maintains first that neither the rules provision, nor the Manual, constitutes federal legislation preempting this Court's regulatory authority, and, second, that these very general, permissive guidelines do not condone the nonlawyer representation for compensation at issue here. Rather, the Committee maintains in its proposed opinion that these provisions merely recognize, in an informal manner, the right of an investor to appear pro se, either by representing himself or with the uncompensated help of a business associate, relative or friend. That practice would not be affected by the opinion. However, the proposed opinion concludes that the representation of an investor in securities arbitration by a nonlawyer for compensation is both unlicensed and unauthorized, and subject to regulation by this Court.
Lastly, the proposed opinion points to several ways in which the public is harmed by the activities of nonlawyer representatives in securities arbitration. Most importantly, the Committee notes that because the stock brokerage industry arbitration forums have no qualification procedures, and nonlawyer representatives  unlike attorneys  are not supervised or subject to discipline by a state bar or any other regulatory body, instances of misleading advertising, ineffective representation and the unethical conduct of nonlawyer representatives are prevalent but unsanctionable. Specifically, nonlawyers who have been disciplined or suspended by the securities industry or from the practice of law can represent investors in arbitration forums and are not required to meet any ethical standards in their practice. Settlement negotiations and the handling of client's money on deposit goes unregulated.
Testimony before the Committee indicated that nonlawyer representatives are sometimes improperly motivated to settle claims rather than arbitrate because they are unable to go to court to confirm or collect an arbitration award on behalf of their client or defend against a broker's attempt to have the award vacated. Moreover, where claims are not settled and litigation does occur, the investor represented by a nonlawyer is sorely disadvantaged because, at least in the securities setting, the defendant broker or firm is always represented by well-resourced attorneys. And, to make matters worse, investors have no recourse against their compensated representatives for the ineffective representation.
After hearing oral argument, reviewing the proposed advisory opinion, and considering the comments of the interested parties, we are persuaded of the need for some regulation of these compensated representatives and approve the UPL Standing Committee's proposed opinion. We conclude that compensated nonlawyer representatives in securities arbitration are engaged in the unauthorized practice of law and pose a sufficient threat of harm to the public to justify our protection.
In State ex rel. Florida Bar v. Sperry, 140 So.2d 587 (Fla.1962), this Court set out the framework for determining whether specific activities constitute the practice of law, which bears repeating here. We explained:
[I]t is not the nature of the agency or body before which the acts are done, or even whether they are done before a tribunal of any sort or in the private office of an individual, that determines whether that which is done constitutes the practice of *1182 law. The best test, it seems to us, is what is done, not where, for the safest measure is the character of the acts themselves. If they constitute the practice of law the fact that they are done in the private office of the one who performs them or before a nonjudicial body in no way changes their character.
....
It is generally understood that the performance of services in representing another before the courts is the practice of law. But the practice of law also includes the giving of legal advice and counsel to others as to their rights and obligations under the law and the preparation of legal instruments, including contracts, by which legal rights are either obtained, secured or given away, although such matters may not then or ever be the subject of proceedings in a court.
We think that in determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.
140 So.2d at 591. And, as we explained recently in Florida Bar v. American Senior Citizens Alliance, Inc., 689 So.2d 255 (Fla. 1997), this Court has continued to adhere to that standard over the years:
For instance, in Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla.1978), The Florida Bar filed a complaint against Brumbaugh, a self-employed secretary who advertised typing services for "Do-It-Yourself" divorces, wills, resumes, and bankruptcies, alleging that Brumbaugh was practicing law without a license. Id. at 1189. For a fee, Brumbaugh prepared the necessary documents for pleading, filing, and securing a dissolution of marriage, as well as "detailed instructions as to how the suit should be filed, notice served, hearings set, trial conducted, and the final decree secured." Id. at 1190. Further, we noted that had Brumbaugh limited her activities to selling printed material purporting to explain legal practices in general, or selling sample legal forms, such activities would not have fallen under the aegis of practicing law. Id. at 1194. Additionally, had Brumbaugh typed forms for her clients, provided she copy only the information given to her in writing by her clients, this too would have been acceptable. However, we ultimately concluded that Brumbaugh's activities constituted the unlicensed practice of law because (1) her customers relied on her to properly prepare the necessary forms for the legal proceeding of a marriage dissolution; (2) she advised clients as to various remedies available to them, or otherwise assisted them in preparing the necessary forms; (3) she inquired into or answered questions of her clients to determine which forms would be necessary, how best to fill out these forms, and how to present the necessary information in court. Id. at 1193-94.
....
More recently, we addressed the issue of the unlicensed practice of law in the preparation and sales of living trusts in Florida Bar re Advisory Opinion  Nonlawyer Preparation of Living Trusts, 613 So.2d 426 (Fla.1992). In that case, American Family Living Trust petitioned the Florida Bar Standing Committee on the Unlicensed Practice of Law for an advisory opinion concerning:
Whether it constitutes the unlicensed practice of law for a corporation or other nonlawyer to draft living trusts and related documents for another where the information to be included in the living trust is gathered by nonlawyer agents of the corporation or by the nonlawyer and the completed documents are reviewed by a member of The Florida Bar prior to execution. *1183 Id. at 426. Upon reviewing similar requests from other parties, the Standing Committee held hearings, gathered both oral and written testimony, and subsequently proposed that this Court issue an opinion finding that nonlawyer companies which sell living trusts are engaged in the unlicensed practice of law and the public is or could be harmed by this practice. Id. at 427. This Court accepted jurisdiction, reviewed the proposed opinion and explained that the assembly, drafting, execution, and funding of a living trust document constituted the practice of law and that a licensed attorney must make the "determination as to the client's need for a living trust." Id. at 427. We further noted that the giving of legal advice concerning the application, preparation, advisability or quality of any legal instruments or forms in connection with inter vivos or testamentary trusts by a lay person also constituted the unlicensed practice of law. Id. (citing In re Florida Bar, 215 So.2d 613, 613-14 (Fla.1968)). Nevertheless, we found that because the "gathering of the necessary information for a living trust" did not constitute the unlicensed practice of law, nonlawyers may properly perform this activity. Id.

689 So.2d at 258-59 (Fla.1997).
Although we recognize that arbitration was set up to be a nonjudicial alternative for dispute resolution, it is clear that, in light of our caselaw thoroughly discussing the activities that constitute the practice of law, the services provided by nonlawyer representatives in the alternative but still adversarial context of securities arbitration constitutes the practice of law. As the Committee pointedly and accurately notes in its proposed opinion, nonlawyer representatives give specific legal advice and perform the traditional tasks of the lawyer at every stage of the arbitration proceeding in an effort to protect the investor's important legal and financial interests. We cannot ignore such a situation. Because such activities  when performed by nonlawyers  are wholly unregulated and unsanctionable, we further agree with the proposed opinion that these activities must be enjoined. In these circumstances, the public faces a potential for harm from incompetent and unethical representation by compensated nonlawyers which cannot otherwise be remedied. See Florida Bar v. Moses, 380 So.2d 412, 417 (Fla.1980) (stating that the "single most important concern in th[is] Court's defining and regulating the practice of law is the protection of the public from incompetent, unethical, or irresponsible representation").
Finally, we also must reject the position of the interested parties that this Court has been preempted from regulating the unlicensed practice of law in this instance. Specifically, the interested parties maintain that we are precluded from regulating the activities at issue here because the general rules governing the SROs do not prohibit nonlawyer representation, and the Arbitrator's Manual, which serves as a handbook for the arbitration process, expressly authorizes lay representation. In Moses, we found that a lay representative appearing before the Public Employees Relations Commission (PERC) was engaged in the unlicensed practice of law, and that, in the absence of authorizing legislation, it was within our purview to regulate it. We explained:
This Court has no control over the agencies of this state, and any attempt to exercise it would violate article II, section 3 of the constitution which states:
No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
In the absence of legislative authorization for lay representation, there would be no question that conduct which constitutes the practice of law, wherever performed, is subject to our constitutional responsibility to protect the public from the unauthorized practice of law. We have so held in finding that, absent legislative governing authority, the preparation and filing of a corporate charter constitutes the unauthorized practice of law. The Florida Bar v. Town, 174 So.2d 395 (Fla.1965), followed in The Florida Bar v. Keehley, 190 So.2d 173 (Fla.1966); The Florida Bar v. Fuentes, 190 So.2d 748 (Fla.1966); and The Florida Bar r. Scussel, 240 So.2d 153 (Fla.1970). *1184 See also In re The Florida Bar, 355 So.2d 766 (Fla.1978). But the legislature has constitutional authorization to oust the Court's responsibility to protect the public in administrative proceedings under article V, section 1 of the Florida Constitution, and when it does so any "practice of law" conduct becomes, in effect, authorized representation.
380 So.2d at 417. In that case, however, we found that "PERC is unquestionably subject to the APA [the Administrative Procedure Act], and the APA has unquestionably authorized representation before PERC by nonlawyers. Sections 120.52(1)(b), 120.62(2), Florida Statutes (1975)." Id. at 417-18. That is not the case here. We agree with the proposed opinion that neither the SRO rules nor the language in the Arbitrator's Manual constitutes federal or state legislative displacement of our authority to protect the public from harm by regulating the unauthorized practice of law.
We do acknowledge that the Securities and Exchange Commission, the federal agency responsible for oversight of securities arbitration, easily could  and may very well choose  to preempt us in enjoining nonlawyer representation by authorizing or regulating the activities of these professionals. Nevertheless, we think that compensated nonlawyer representatives in securities arbitration are engaged in the unauthorized practice of law and the protection of the public requires us to step in where there is no such legislation or regulation.
Accordingly, we enjoin nonlawyers from representing investors in securities arbitration proceedings for compensation from the date this opinion becomes final and we approve the Committee's proposed opinion.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The proposed opinion specifically does not address (1) the propriety of nonlawyer representation in any other form of arbitration; (2) the propriety of an investor's representation in securities arbitration by an attorney who is licensed to practice in another jurisdiction, but not in Florida; or (3) the propriety of nonlawyer representation in securities arbitration to resolve claims of employees against securities firms or inter-industry disputes.