SHAW, Justice.
In The Florida Bar re Advisory Opinion HRS Nonlawyer Counselor, 518 So.2d 1270 (Fla.1988), we determined that Florida Department of Health and Rehabilitative Services (HRS or Department) lay counselors are engaged in the practice of law in drafting legal documents and representing HRS in court in uncontested juvenile dependency proceedings. We permitted the practice to continue while an ad hoc committee of this Court studied the problem and made recommendations. We now have for review the report of the Supreme Court Committee on HRS Nonlawyer Counselors (Committee), and the HRS response. We have jurisdiction. Art. V, § 15, Fla. Const. We order the practice ended.
The factual basis for this opinion is contained in HRS Nonlawyer Counselor. The Committee appointed pursuant to that opinion is composed of representatives from the following organizations: the state judiciary, The Florida Bar, HRS, the state attorney’s office, Children’s Home Society, Guardian Ad Litem Program, the medical community, and Legal Services of Greater Miami. In its present report, the Committee points out the problem facing Florida’s juvenile system:
In 1988 Florida’s dependency system was flooded with approximately 100,000 reports of abused and neglected children. This Committee has found that in spite of herculean efforts by the courts, the Department of HRS, the guardians ad *910 litem and others, the dependency system is simply unable to dispose of these cases within the statutory time limits for processing children through emergency shelter and foster homes.
Reports by the Office of the State Court Administrator and the Auditor General indicate that in 1988, 22% of cases remained open for more than 180 days, despite the statutory maximum of 60 days. Statistics also show that children remain in foster care for an average of 30 months, when the statutory maximum is 18 months. These statistics reflect dreadful delays in the functioning of the dependency system in this state.
Each of these procedural delays means a delay in a child’s ability to settle into a home, to form or repair attachments to family and friends, and to resume the growth toward maturity that has inevitably been halted or stunted by the events that precipitated the state’s intervention in the child’s. life.
The Committee appointed by the Supreme Court has determined that the problem can be attributed in part to insufficient involvement by lawyers in the juvenile process:
Committee members collectively have extensive experience in the dependency system, and have knowledge of harm that has come to children through the current practice of allowing counselors to handle these cases without legal representation. The statistics reviewed in this report show the extensive delays in cases in which children are placed in emergency shelter care or foster care. The Committee believes that lack of legal representation of HRS contributes to these delays. The Committee has considered the extent to which HRS counselors are overburdened with cases, and the high turnover rate of counselors in Florida. These factors make it inappropriate for HRS counselors to handle dependency cases without legal representation.
The Committee reaches the following conclusion:
Among the conclusions reached in the course of this Committee’s inquiry into the harm that occurs to children under the aegis of the child welfare court system, perhaps the most direct conclusion is that a greater investment of time by lawyers in the system is necessary, if we are to protect the important rights of the children and families whose lives come under the control of the system.
As the system is arranged now, HRS counselors of necessity fail their clients in two ways. First they are made to assume the role of legal advocate for their clients; since counselors’ experience and training have prepared them for social work and not legal practice, their clients suffer through inadequate legal representation. Second, the time invested by counselors in preparing inadequate legal cases is time that could far better be spent improving their performance of the social service vocation for which they are trained.
The reasonable answer for the good of Florida’s children is to provide additional training to counselors in the aspects of the legal process for which they must take responsibility, and assure that those aspects of the process which require legal judgment, or where important rights are at stake, are left in the hands of proper legal counsel.
(Emphasis in original.)
Based upon the foregoing, the Committee makes the following recommendation:
To the extent that the Florida Rules of Juvenile Procedure do not expressly contain these requirements, the Committee recommends clarifying rule changes to ensure the following:
1. An attorney’s supervision is required in the preparation of legal documents, as well as an attorney’s signature.
2. An attorney’s presence is required for all court proceedings.
In response to the Committee report, HRS recognizes that delays in proceedings can be attributed in part to inadequate lawyer involvement in the juvenile system. However, HRS claims that the problem can be adequately addressed merely by increasing lawyer supervision over lay counselors. *911 To require full in-court legal representation in uncontested cases would cost approximately $4,500,000 per year, the Department projects, whereas its own plan for increased supervision would cost only about $3,500,000. In addition, HRS asserts that because parents currently have no right to counsel in uncontested cases, requiring legal representation for HRS would upset the balance of fairness. The Department concludes that this Court should continue to allow counselors to draft and sign legal documents and represent HRS in court.
We disagree, based upon the Committee report. It is clear from the report that the current HRS practice fails to provide competent, responsible representation. See The Florida Bar v. Moses, 380 So.2d 412, 417 (Fla.1980) (the purpose in regulating the practice of law is the “protection of the public from incompetent, unethical, or irresponsible representation.”). Though the Department’s plan purportedly would save money, it would in effect result in a continuation of the current practice, leaving the present faults unaddressed. As to the Department’s claim concerning the balance of fairness, we detect no inequity in requiring HRS to be represented by lawyers in uncontested (as well as contested) juvenile proceedings. In such cases, the Department is the party actively pursuing the cause before the court. The needed legal advice and expertise in such representation would serve the interests of all parties and promote the efficiency and essential fairness of the proceeding.
Accordingly, we hold that adequate legal representation on behalf of HRS is required at every stage of juvenile dependency proceedings conducted pursuant to part III, chapter 39, Florida Statutes (1987). An attorney’s presence is required in all court proceedings. An attorney’s supervision is required in the preparation of all legal documents. A lawyer representing HRS must sign all petitions, pleadings, motions, discovery requests, performance agreements, permanent placement plans, affidavits of diligent search, affidavits under the Uniform Child Custody Jurisdiction Act, affidavits filed in lieu of a detention petition, predispositional reports, judicial review social studies, certificates of service, notices of appeal, and all other significant legal documents. We extend our holding to include all child-in-need-of-services proceedings, all foster care proceedings, and all termination of parental rights proceedings conducted pursuant to parts IV, V, and VI, chapter 39, Florida Statutes (1987), and all comparable legal documents prepared thereunder. Effective January 1, 1990, HRS must end the practice of law by its lay counselors under these statutes. We order the Juvenile Rules Committee of The Florida Bar to draft and submit to this Court by August 23, 1989, proposed amendments to the juvenile rules consistent with this opinion.
In its report, the Committee recommends that a number of additional steps be taken to improve the juvenile process in Florida, including the following: revise and update the Rules of Juvenile Procedure, amend the Rules of Judicial Administration, make changes in the Judicial Council of Florida, commission a study by the Judicial Council, increase the educational opportunities for judges and lawyers in juvenile matters, and increase the scope of the Guardian Ad Li-tem Program. Though these recommendations are unrelated to the legal issue before us, they do address legitimate concerns within the juvenile system. Consequently, we are forwarding copies of the report to the following organizations: Guardian Ad Litem Program, Judicial Council of Florida, and The Florida Bar.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, BARKETT, GRIMES and KOGAN, JJ., concur.