# Supreme Court of Florida

_____

No. SC17-1510
_____

**THE FLORIDA BAR RE:  ADVISORY OPINION—
SHORE v. WALL, et al.**

October 4, 2018

PER CURIAM.

James Wall filed with the Standing Committee on the Unlicensed Practice of

Law (Standing Committee) a request for issuance of an advisory opinion pursuant

to the procedures set forth in Rule Regulating the Florida Bar 10-9.1 and this

Court's opinion in _Goldberg v. Merrill Lynch Credit Corp._, 35 So. 3d 905 (Fla.

2010).  In the request, Wall alleged that Jeffrey Paine and his company, Jupiter

Asset Recovery, LLC (collectively "JAR"), engaged in the unlicensed practice of

law in connection with JAR's attempt to recover surplus funds from the Manatee

County Clerk of Court's registry on Wall's behalf.  The Standing Committee held

a public hearing where it considered live and written testimony, _see_ Rule

Regulating the Florida Bar 10-9.1(f), and ultimately filed with this Court a

proposed advisory opinion concluding that JAR's conduct, as alleged by Wall and if taken as true, would constitute the unlicensed practice of law.[1]

After the Standing Committee's proposed advisory opinion was filed, interested parties were permitted to file briefs in support of or in opposition to the proposed advisory opinion. *See* R. Regulating Fla. Bar 10-9.1(g)(3). JAR and Global Discoveries, Ltd., filed briefs in opposition to the proposed advisory opinion; the Standing Committee filed a response to the briefs. After considering the proposed opinion and the briefs of the interested parties, the Court approves the proposed advisory opinion as set forth in the appendix to this opinion.[2]

It is so ordered.

PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA and LAWSON, JJ., concur.
CANADY, C.J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, C.J., dissenting.

I adhere to the view that "the Florida Constitution gives this Court no

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.; R. Regulating Fla. Bar 10-9.1(g).

2. References in the Appendix to TABS A, B, and C, are to the attachments to the proposed advisory opinion originally filed by the Standing Committee in this case on August 15, 2017.

authority to issue" the advisory opinions regarding pending litigation contemplated by rule 10-9.1. *Fla. Bar re Advisory Op.—Scharrer v. Fundamental Admin. Servs.*, 176 So. 3d 1273, 1279 (Fla. 2015) (Canady, J., dissenting). I therefore would dismiss this proceeding.

Original Proceeding – The Florida Bar Re: Advisory Opinion

Kellie D. Scott, Chair, Jeffrey T. Picker, and William A. Spillias, Standing Committee on Unlicensed Practice of Law, Tallahassee, Florida,

      for Petitioner

Kevin P. Tynan of Richardson & Tynan, P.L.C., on behalf of Jupiter Asset Recovery, LLC and Jeffrey Paine, Tamarac, Florida; Amy L. Dilday, Starlett M. Massey, and Jonathan D. Kaplan of McCumber, Daniels, Buntz, Hartig, Puig, & Ross, P.A., on behalf of Global Discoveries, Ltd., Tampa, Florida,

      Responding

**APPENDIX**

THE FLORIDA BAR
STANDING COMMITTEE ON THE
UNLICENSED PRACTICE OF LAW

FAO #2017-1, *SHORE V. WALL, ET. AL.*

_____/

<u>PROPOSED ADVISORY OPINION</u>

August 15, 2017

## INTRODUCTION

This request for a formal advisory opinion is brought pursuant to Rule 10-9.1 of the Rules Regulating The Florida Bar and *Goldberg v. Merrill Lynch Credit Corp.,* 35 So. 3d 905 (Fla. 2010); (TAB A). [1]  The Petitioner, James Wall (hereinafter, "Wall"), is a defendant in an interpleader action filed by the Clerk of the Circuit Court of Manatee County (Case No. 2014 CA 3155).  In Wall's Answer to Complaint For Interpleader and Objection and Defenses to Jupiter Asset Recovery, LLC's Claim to Surplus Funds, he asserted that Jupiter Asset Recovery, LLC (hereinafter, "JAR") engaged in the unlicensed practice of law.  The Circuit Court, citing *Goldberg*, found that it did not have jurisdiction over the unlicensed practice of law claim and stayed the case pending a determination by the Supreme Court of Florida whether JAR's conduct constitutes the unlicensed practice of law (TAB A, p. 23).

Pursuant to Rule 10-9.1(f) of the Rules Regulating The Florida Bar, public notice of the hearing was provided on The Florida Bar's website, in The Florida

---

[1] Petitioner filed an unlicensed practice of law complaint/request for formal advisory opinion, which was originally investigated by the local circuit committee under Rules 10-5 and 10-6 of the R. Regulating Fla. Bar.  Finding that respondent, Jeffrey Paine, and his company, Jupiter Asset Recovery, LLC, engaged in the unlicensed practice of law, the circuit committee offered respondent a cease and desist affidavit, which he refused to sign.  Because there is no Florida case law on point, the local circuit committee closed its investigation and forwarded the request for formal advisory opinion to the Standing Committee on the Unlicensed Practice of Law (hereinafter, "Standing Committee").

Bar *News*, and in the *Orlando Sentinel*. The Standing Committee held a public hearing on January 26, 2017. Testifying on behalf of the petitioner were attorneys Ryan J. Hittel and Christopher M. Hittel. Testifying on behalf of JAR was attorney Kevin Tynan and Jeffrey Paine (hereinafter, "Paine"). Also testifying were attorneys Starlett Massey and Jonathan D. Kaplan (Tab B). In addition to the testimony presented at the hearing, the Standing Committee received written testimony from the Petitioners and JAR/Paine which has been filed with this Court (Tab C).

The question presented for consideration by the Standing Committee is whether a nonlawyer company is engaged in the unlicensed practice of law when it holds itself out as having special knowledge on how to recover excess proceeds from a tax deed sale held by the Clerk of Court under Chapter 197, Fla. Stat.; identifies and contacts owners of excess tax deed sale proceeds for the purpose of offering to recover the excess proceeds on their behalf from the Clerk of Court; offers the owners of excess proceeds a contingency arrangement using a purported assignment modified by an agreement to share the excess proceeds upon recovery, with the owner retaining a 60% interest in the excess proceeds; requests from the Clerk of Court the surplus funds based on the purported assignment; and files pleadings in interpleader actions to recover the surplus funds.

In *Goldberg*, the petitioners filed class action lawsuits to recover document preparation fees charged by respondent Merrill Lynch for services performed by its clerical personnel in processing mortgage loans. Merrill Lynch moved to dismiss the complaints, arguing, among other things, that the circuit court lacked jurisdiction to hear any claims relating to the unlicensed practice of law. The circuit court granted the motions and dismissed the cases. The Fourth District Court of Appeal affirmed the dismissals because the respondents had not previously been prosecuted for the unlicensed practice of law by The Florida Bar or disciplined by this Court. This Court approved the Fourth District's decision to affirm the dismissals finding that:

> To state a cause of action for damages under any legal theory that arises from the unauthorized practice of law, we hold that the pleading must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law. (citation omitted) Stated another way, a claimant must allege as an essential element of any cause of action premised on the unlicensed practice of law that this Court has ruled the activities are the unauthorized practice of law. (citations omitted)
>
> * * *
>
> [A] plaintiff will not be able to state a cause of action premised on the unauthorized practice of law on a case of first impression (where this Court has not ruled on the actions at issue). In those cases, the pleading may be dismissed without prejudice or the action may be stayed

> until a determination from this Court pursuant to the advisory opinion procedures of rule 10-9.1 or the complaint and injunctive relief procedures of rules 10-5, 10-6, and 10-7 of the Rules Regulating The Florida Bar. (citations omitted)

*Goldberg* at 907-8.

In staying the Manatee County interpleader action at issue here, the circuit court cited to *Goldberg*, and noted that the Supreme Court of Florida has exclusive jurisdiction to determine the issue of unlicensed practice of law (TAB A, p. 23).

### *RULE 10-9.1 OF THE RULES REGULATING THE FLORIDA BAR*

In *Goldberg*, this Court recognized that rule 10-9.1(c) of the Rules Regulating The Florida Bar prevents a proposed formal advisory opinion from being issued "with respect to any case or controversy pending in any court or tribunal in this jurisdiction" thereby prohibiting the Standing Committee from issuing a proposed formal advisory opinion while the underlying action is stayed or dismissed without prejudice. The Court, therefore, suspended the rule in the circumstances described in *Goldberg* and directed The Florida Bar to propose a rule change according to the opinion. Subsequently, rule 10-9.1 was amended to add language to provide that "the [Standing Committee] shall issue a formal advisory opinion under circumstances described by the court in *Harold Goldberg v. Merrill Lynch Credit Corporation*, 35 So. 3d 905 (Fla. 2010) when the petitioner is a party to a lawsuit and that suit has been stayed or voluntarily dismissed without

prejudice." The Court, sua sponte, amended rule 10-9.1(c) in *In re: Amendments to Rule Regulating The Florida Bar 10-9.1*, 176 So. 3d 1273 (Mem) (Fla. 2015).[2] Consequently, if a proper *Goldberg* request is brought, a proposed advisory opinion must be issued.[3]

Because this is a case of first impression, and the circuit court stayed the action pending a determination from this Court, this was a proper *Goldberg* request. A public hearing was held on January 26, 2017, after which the Standing Committee voted to issue the proposed formal advisory opinion that follows.

FACTS

The factual allegations relating to Wall's claim that JAR engaged in the unlicensed practice of law are contained in paragraphs numbered 15 – 47 of Defendant, James M. Wall's Answer to Complaint for Interpleader and Objection and Defenses to Jupiter Asset Recovery, LLC's Claim to Surplus Funds (TAB A, pp. 12 – 17), Mr. Wall's April 15, 2015 statement accompanying his unlicensed practice of law complaint (TAB A, pp. 3 – 4), and the January 13, 2017, Statement of Petitioner, James M. Wall, For Hearing on Request for *Goldberg* Advisory

---

[2] Consistent with *Goldberg*, the amendment deleted the requirement for a "voluntary" dismissal.

[3] Footnote 3 of *Goldberg* provides "To be clear, the Florida Bar shall issue a formal advisory opinion upon request of a party in the circumstances described herein." 35 So. 3d at 908.

Opinion (TAB C, pp. 2 – 17). Wall alleged the following operative facts which are summarized in relevant part as follows:

1. Paine/JAR contacted Wall regarding a tax deed surplus being held in the court's registry after a tax deed sale of Wall's property. (TAB A, p. 3 and p. 12, paragraph 15)

2. Paine convinced Wall to hire JAR/Paine to recover the surplus funds on his behalf (TAB A, p. 12, paragraph 16). Wall assumed he was dealing with a licensed attorney (TAB C, p. 3, paragraph 6).

3. Paine sent a notary to Wall's business with two documents to sign, an "Agreement" (TAB A, p. 5) and an "Absolute Assignment of Interest in Tax Deed Surplus Proceeds" (TAB A, p. 6). Wall signed both documents. (TAB A, p. 13, paragraphs 17 and 19)

4. Wall believed at the time he signed the Agreement and Absolute Assignment that Paine was agreeing to represent him. (TAB A, p. 4)

5. The Agreement attempts to allow JAR to file documents to recover the tax deed surplus on Wall's behalf, with 60% of the proceeds going to Wall and the remainder (minus any costs) going to JAR. (TAB A, p. 13, paragraph 18)

6. Under the Agreement, Wall purports to transfer his interest in the surplus funds to JAR so that JAR can "file all necessary documents in order to recover any

- 10 -

and all monies available as a result of the tax deed sale." (TAB A, p. 15, paragraph 33)

7. The Agreement also states that JAR shall "make every effort to obtain any available funds through the Clerk of Court." (TAB A, p. 15, paragraph 34)

8. The essence of the Agreement is clear, JAR will file the necessary court documents to obtain payment from the Clerk of Court on a contingency basis, for a 40% fee (which would amount to a fee near $94,000). (TAB A, p. 16, paragraph 35)

9. Because JAR is not a law firm, and Paine is not an attorney, the only way JAR could file documents with the court on Wall's behalf was to come before the court as a straw-man assignee. (TAB A, p. 16, paragraph 36)

10. JAR did not disclose the Agreement when filing his proof of claim with the Clerk of Court to recover the surplus tax deed funds nor did it disclose the Agreement to the court in the interpleader action so that it would not be apparent on the face of its claim that it was representing another party. (TAB A, p. 16, paragraph 37, and TAB A, pp. 7 – 9)

11. Even though Wall signed the Absolute Assignment and Agreement he understood that JAR/Paine would receive 40% of all funds recovered in return for their work to recover the funds. (TAB A, p. 3)

12. At the time Wall signed the Absolute Assignment and Agreement, liens on the property held by the IRS and Manatee County Code Enforcement exceeded the amount of the surplus. (TAB A, p. 13, paragraph 20)

13. After the tax deed sale, the IRS lien was paid in full at the closing of the sale of another property Wall owned, and the Manatee County Code Enforcement lien was substantially reduced. The payment of the IRS lien and the reduction in the code enforcement fine resulted in the surplus funds available to the owner increasing from $0 to approximately $235,000. (TAB A, p. 13, paragraphs 21 – 23)

14. JAR seeks to recover 40% of this $235,000. (TAB A, p. 13, paragraph 24)

15. Paine drafted a letter for Wall's signature to the attorney for the Clerk of Court in the interpleader action (TAB A, p. 10). The letter, which Wall did not sign, includes the following language: "I understand that Jupiter has filed an Answer and Cross Claim in this matter which protects my interest in these funds[]" and "Please consider this letter as notice that I shall not file a responsive pleading in this case and I consent to a default against me in this case." (TAB A, p.10 and p. 16, paragraphs 38 – 40)

DISCUSSION

As this Court noted in *The Florida Bar re: Advisory Opinion – Scharrer v. Fundamental Administrative Services*, 176 So. 3d 1273, 1278 (Fla. 2015), it is not the Standing Committee's role to sit as the trier of facts or to decide disputed facts:

> Although we recognize that the Standing Committee does not sit as a trier of fact, and it is not the Committee's role to decide disputed issues of fact, our decision in Goldberg does authorize the Standing Committee to determine whether the specific facts as alleged in a petition for an advisory opinion, if those facts are taken as true, would constitute the unlicensed or unauthorized practice of law.

Thus, in reviewing the alleged facts the Standing Committee takes as true those facts, and applies existing case law to the facts to determine whether the activity in question constitutes the unlicensed practice of law.

Essentially, Wall alleged that JAR/Paine: (1) held himself out as an attorney and as having special knowledge on how to recover excess proceeds from a tax deed sale, (2) represented him in the interpleader action, and (3) prepared legal documents for him which affected his important legal rights.

Holding Out

Allegations regarding Paine holding himself out as an attorney are contained within paragraphs 2 and 4 above, and paragraph 43 of Wall's Interpleader Answer (TAB A, p. 17), which states that:

> Mr. Paine also holds himself out to be an attorney on his website, despite not being licensed to practice law in Florida. See Composite Exhibit 'E', attached (Google

- 13 -

search showing title of jupiterassetrecovery.com to be "Jupiter Asset Recovery | Jeffrey Paine Attorney"; Source code of jupiterassetrecovery.com containing the page title "Jupiter Asset Recovery | Jeffrey Paine Attorney".)

Taken as true, these allegations raise unlicensed practice of law concerns because it constitutes the unlicensed practice of law for nonlawyers to hold themselves out as lawyers. *The Florida Bar v. Warren*, 655 So. 2d 1131 (Fla. 1995). As this Court found in *The Florida Bar v. Gordon*, 661 So. 2d 295 (Fla. 1995), it constitutes the unlicensed practice of law for nonlawyers to "impliedly or expressly, personally or by use of advertisement, hold[] themselves out as lawyers and authorized to practice law in Florida and describing themselves as lawyers, attorneys, attorneys at law, esquire, counselor, counsel, or any other title that is designed to lead a member of the public into believing that respondents are licensed to practice law in Florida and able to render assistance with legal matters."

By contacting owners of excess tax deed sale proceeds for the purpose of offering to recover the excess proceeds on their behalf from the Clerk of Court, JAR/Paine is implicitly holding out as having special knowledge on how to recover the excess proceeds. This raises unlicensed practice of law concerns because it constitutes the unlicensed practice of law for a nonlawyer to hold himself out as having special knowledge or expertise in legal areas. *The Florida Bar v. Davide*, 702 So. 2d 184 (Fla. 1997) (nonlawyer engaged in unlicensed practice of law and

- 14 -

enjoined from advertising that his or her company specializes in legal areas or that gives the public the expectation that the company has expertise in the field of law, and that describes legal procedures).

Representation in Interpleader Action

The gravamen of the allegations in paragraphs 3 – 15 above are that JAR/Paine had Wall execute both an Absolute Assignment and an Agreement to assist Wall in obtaining the tax deed surplus from the Clerk and the court. However, JAR/Paine only filed the Absolute Assignment with the Clerk and the court in the interpleader action, so that it would appear to the Clerk and court that Wall assigned his interest in the tax deed surplus to JAR/Paine. The Absolute Assignment provides "This Agreement is complete, in and of itself, representing the entire agreement between all Parties hereto[.]" However, the Agreement, executed contemporaneously with the Absolute Assignment, indicates that there was not an absolute or complete assignment. The Agreement, which mandates that JAR make every effort to obtain the surplus funds, provides that Wall will receive 60% of the surplus funds recovered by JAR. The remaining 40% would go to JAR. The effect of this Agreement, which was not disclosed to the Clerk or the court, is that any action that JAR took with the Clerk or the court in the interpleader action to obtain the tax deed surplus it took not only on its own behalf, but on behalf of Wall as well. Before Wall filed his Answer in the interpleader

- 15 -

action, JAR/Paine prepared and sent him a letter to sign and send to the Clerk's attorney, wherein Wall asserts his understanding that JAR filed an Answer and Cross Claim which protects his interest in the surplus funds and that he would not be filing a responsive pleading in the interpleader case and that he consents to a default judgment against him. Wall did not sign this letter.

Taken as true, the allegations in paragraphs 3 – 15 above raise unlicensed practice of law concerns because it constitutes the unlicensed practice of law for a nonlawyer to represent another in court. As this Court stated, axiomatically, "It is generally understood that the performance of services in representing another before the courts is the practice of law."[4] *See The Florida Bar v. Smania*, 701 So. 2d 835 (Fla. 1997) (nonlawyer enjoined from appearing in court on behalf of others other than as a witness); *The Florida Bar v. Eubanks*, 752 So. 2d 540 (Fla. 1999) (nonlawyer engaged in unlicensed practice of law and enjoined from appearing in any Florida court, directly or indirectly, as a spokesperson or representative for litigants in any court proceeding); *The Florida Bar v. Snapp*, 472 So. 2d 459 (Fla. 1985) (nonlawyer engaged in unlicensed practice of law and enjoined from representing an individual other than himself in court proceedings); *The Florida Bar v. Strickland*, 468 So. 2d 983 (Fla. 1985) (nonlawyer engaged in

---

[4] *The Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), *judg. vacated on other grounds*, 373 U.S. 379 (1963).

the unlicensed practice of law and enjoined from appearing in Florida courts on behalf of a party in family law matters); *The Florida Bar v. Rich*, 481 So. 2d 1221 (Fla. 1986) (nonlawyer engaged in unlicensed practice of law and enjoined from representing others in court in eviction and criminal matters).

Here, JAR/Paine was representing Wall because Wall still had an interest in the litigation. This was not a situation where Wall signed over all of his interests in the proceeds of the sale to JAR/Paine so that JAR/Paine became the party to the action. Instead, JAR/Paine offered Wall a contingency fee agreement where Wall retained an interest in the proceeds of the sale as he stood to gain 60% from any recovery. Wall was, therefore, a party to the action and was being represented by JAR. By so representing Wall, JAR/Paine engaged in the unlicensed practice of law.

Preparation of Documents Affecting Legal Rights

Taken as true, the allegations in paragraphs 9 and 15 above raise unlicensed practice of law concerns because it constitutes the unlicensed practice of law for a nonlawyer to prepare a document for another which affects their important legal rights. *The Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), *judg. vacated on other grounds*, 373 U.S. 379 (1963); *The Florida Bar v. Gordon*, 661 So. 2d 295 (Fla. 1995) (nonlawyer engaged in unlicensed practice of law and enjoined from allowing members of the public to rely on respondents to properly prepare

legal forms or legal documents affecting an individual's legal rights); *The Florida Bar v. Eidson*, 703 So. 2d 442 (Fla. 1997) (nonlawyer enjoined from preparing and filing legal documents on behalf of another); *The Florida Bar v. Williams*, 388 So. 2d 564 (Fla. 1980) (nonlawyer enjoined from assisting customers in preparing documents or forms necessary for submission to any court or governmental agency); *The Florida Bar v. Miravalle*, 761 So. 2d 1049, 1051 (Fla. 2000) ("This Court has repeatedly held that the preparation of legal documents by a nonlawyer for another person to a greater extent than typing or writing information provided by the customer on a form constitutes the unlicensed practice of law." (citations omitted)). Both the letter to the Clerk's attorney consenting to a default judgment and the answer filed by JAR/Paine in the interpleader action would certainly affect Mr. Wall's important legal rights by requesting from the Clerk of Court surplus funds.

Further, taken as true, the above allegations raise unlicensed practice of law concerns to the extent Wall relied on JAR/Paine to file with the Clerk and court the necessary documents to obtain the surplus tax deed funds. As this Court noted in *The Florida Bar v. Brumbaugh*, 355 So. 2d 1186, 1193-4 (Fla. 1978), "it is clear that her clients placed some reliance upon her to properly prepare the necessary legal forms for their dissolution proceedings. To this extent we believe that Ms. Brumbaugh overstepped proper bounds and engaged in the unauthorized practice

- 18 -

of law." *See also The Florida Bar v. Williams*, 388 So. 2d 564 (Fla. 1980) (nonlawyer enjoined from allowing members of the public to rely on her to properly prepare legal forms or legal documents affecting a customer's legal rights).

PUBLIC HARM

Separate from the unlicensed practice of law issue, the Standing Committee was also concerned that JAR/Paine's business model of only filing the Absolute Assignment with the Clerk and court, and not also disclosing the contemporaneously executed Agreement, when attempting to recover the tax deed surplus was, at a minimum, misleading, and perhaps, a fraud on the court, because the true relationship between JAR/Paine and its customers is not disclosed to the Clerk and court. Without knowledge of the Agreement, the court would have no way of knowing about the unlicensed practice of law occurring before it. If an attorney filed misleading documents with a court that hid his or her true relationship with the client, the attorney would be subject to discipline for lack of candor toward the tribunal. Just as lawyers must avoid conduct that undermines the integrity of the adjudicative process, this Court must ensure that nonlawyers do not undermine the integrity of the adjudicative process. As this Court noted in *The Florida Bar v. Moses*, 380 So. 2d 412, 417 (Fla. 1980), "the single most important

- 19 -

concern in the Court's defining and regulating the practice of law is the protection of the public from incompetent, unethical, or irresponsible representation."

The Standing Committee had similar concerns about the language in the Absolute Assignment, which provides that "This Agreement is complete, in and of itself, representing the entire agreement between all Parties hereto." The statement was patently false. The Absolute Assignment did not represent the entire agreement between JAR/Paine and Wall; there was also the contemporaneously executed Agreement between the parties. It was this Agreement which resulted in JAR/Paine's improper representation of Wall before the Clerk and the court in the interpleader action. The Standing Committee felt that this patently false language in the Absolute Assignment was, at a minimum, misleading, and perhaps a fraud on the court, and warrants the public's protection by this Court.

CONCLUSION

It is the opinion of the Standing Committee on the Unlicensed Practice of Law that a nonlawyer company is engaged in the unlicensed practice of law when it holds itself out as having special knowledge on how to recover excess proceeds from a tax deed sale held by the Clerk of Court under Chapter 197, Fla. Stat.; identifies and contacts owners of excess tax deed sale proceeds for the purpose of offering to recover the excess proceeds on their behalf from the Clerk of Court; offers the owners of excess proceeds a contingency arrangement using a purported

assignment modified by an agreement to share the excess proceeds upon recovery, with the owner retaining a 60% interest in the excess proceeds; requests from the Clerk of Court the surplus funds based on the purported assignment; and files pleadings in interpleader actions to recover the surplus funds.

The Standing Committee is not sitting as the trier of fact in this matter. Should this Court adopt the Standing Committee's proposed formal advisory opinion, it would establish the precedent required by *Goldberg* and be the standard to be applied by the trier of fact in ultimately deciding whether the defendants engaged in the unlicensed practice of law.

Respectfully Submitted,

/s/ Kellie D. Scott by Jeffrey T. Picker
Kellie D. Scott, Chair
Standing Committee on
Unlicensed Practice of Law
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida 32399-2300
(850) 561-5840
Fla. Bar No. 432600
Primary Email: upl@flabar.org

/s/ Jeffrey T. Picker
Jeffrey T. Picker
Fla. Bar No. 12793

/s/ William A. Spillias
William A. Spillias
Fla. Bar No. 909769
The Florida Bar
651 East Jefferson Street

Tallahassee, Florida 32399-2300
(850) 561-5840
Primary Email: jpicker@flabar.org
Secondary Email: upl@flabar.org